### SAWYER ET AL. *v.* TURPIN ET AL.

As the exchange of a valid security for one of equal value within four months prior to the filing of a petition in bankruptcy, even when the creditor and debtor know of the insolvency of the latter, takes nothing away from the other creditors, and is, therefore, not in conflict with the thirty-fifth section of the Bankrupt Act, — *Held*, that a chattel mortgage, taken within that period of time by a creditor in exchange for a prior valid bill of sale of the same property, and recorded pursuant to the laws of the State where the transaction took place before any rights of the assignees in bankruptcy accrued, cannot be impeached by them as a fraudulent preference within the meaning of that act.

APPEAL from the Circuit Court of the United States for the District of Massachusetts.

On the fifteenth day of May, 1869, J. C. Bacheller, in order to secure a debt due by him to Novelli & Co., executed a bill of sale conveying his chattel interest in certain property to Turpin, one of the defendants below.

This conveyance was not recorded, nor was possession had thereunder.

On the 31st of July, 1869, Turpin having surrendered the bill of sale, Bacheller, in exchange therefor, executed to him a mortgage upon the same property. This mortgage was recorded on the 17th of the following September.

Bacheller filed his petition in bankruptcy the twenty-second day of October then next ensuing; and the appellants, his assignees, filed their bill in the District Court to set aside the mortgage as a fraudulent preference of a creditor, alleging that Bacheller was insolvent when the mortgage was given, and that Turpin, and Novelli & Co., the other defendants, knew of the fact.

The District Court passed a decree dismissing the bill, which was affirmed by the Circuit Court. The assignees appealed to this court.

The recording statutes of Massachusetts which apply to the case are set forth in the opinion of the court.

*Mr. Benjamin Dean* and *Mr. J. G. Abbott* for the appellants.

The question presented in this case is, whether the chattel mortgage of July 31, 1869, given by the bankrupt Batcheller to the defendant Turpin, is void as against the assignees, as being a fraudulent preference of a creditor under the Bankrupt Act.

The defendants cannot claim under the absolute conveyance of May 15, because it is admitted by them that it was surrendered. They took the mortgage under which they claim as collateral security for a pre-existing debt due from the mortgagor. He was then insolvent, and they knew it. The case comes exactly within the provisions of the Bankrupt Act, avoiding such transactions as fraudulent; and it is entirely immaterial that a prior conveyance of the same property was given up.

The conveyance of May 15 was null and void against cred-

itors or their representatives, as it was never recorded, nor was possession of the mortgaged property given or taken under it. Stat. of Mass., ch. 151, sect. 1.

The Bankrupt Act substantially provides that a mortgage, to be valid against assignees, must be recorded according to the laws of the State where it is made. Bankrupt Act, sect. 14, prov. 2.

No sale or delivery was intended. The instrument of May 15 was given only as security for a debt, not to make an absolute sale of the property; so that, even between the parties, no title had passed before it was surrendered.

It has been repeatedly held, in reference to questions of bankruptcy and insolvency, that the validity of any instrument claimed under against an assignee must be determined by the state of facts existing at the time of its execution. *Forbes* v. *Howe*, 162 Mass. 427; *Blodgett* v. *Hildreth*, 11 Cush. 311; *Paul* v. *Waite*, 11 Gray, 190; *Simpson* v. *Carlton*, 1 Allen, 109; *Denny* v. *Same*, 2 Cush. 160.

Every conveyance by a bankrupt, which by the laws of the State where it is made is void against creditors, is also void against the assignee in bankruptcy. *Allen* v. *Massey*, 17 Wall. 357; *Bank of Leavenworth* v. *Hunt*, 11 id. 391; *Kane, Assignee,* v. *Rice*, Nat. Bank Reg., vol. x. 469; *Edmondson* v. *Hyde*, id. vol. vii. 1; *Thornhill* v. *Link*, id. vol. viii. 521; *In re Wynne*, id. vol. iv. 5, Chase, C. J.

The assignee takes what any creditor could take; otherwise the creditors, instead of gaining by the Bankrupt Act, are losers.

*Mr. Joshua D. Ball* for the appellees.

The surrender of the deed was a sufficient consideration for the mortgage.

Even if never recorded or exchanged for the mortgage, and if no possession had been taken, the deed, being valid as against Bacheller, would have been valid as against his assignees in bankruptcy.

Assignees in bankruptcy take, except in cases of fraud only, the rights of the bankrupt, and subject to all the equities and incumbrances which exist against the bankrupt; and an unrecorded mortgage of chattels, being valid as against the bankrupt, is valid as against his assignees. *In re J. Dow*, 6 N. B. R. 11;

*In re Griffiths*, 3 id. 179; *Sawyer* v. *Turpin*, 5 id. 339, 346; *Winslow* v. *McLellan*, 2 Story, 495, 500; *Mitchell* v. *Winslow*, id. 630; *Fletcher* v. *Morey*, id. 555; *Ex parte Newhall*, id. 363; *Fiske* v. *Hunt*, id. 584; *Parker* v. *Muggridge*, id. 334.

An exchange of security, even after the debtor is known to be insolvent, is perfectly valid if the creditor by the exchange receives no more in value than he gives up. *Stevens* v. *Blanchard*, 3 Cush. 169.

The validity of the mortgage depends not upon the state of facts existing at its date; but, as it was exchanged for another form of security on the same property, its validity will be upheld because the security for which it was an exchange was valid, and made and delivered more than four months before proceedings in bankruptcy were commenced. *Stevens* v. *Blanchard, supra ; Winslow* v. *McLellan*, 2 Story, 495, 500; *Clark* v. *Iselin*, 21 Wall. 360 ; *Cook* v. *Tullis*, 18 id. 340; *Watson* v. *Taylor*, 21 id. 378; *Burnhisel* v. *Firman*, 11 Nat. Bank Reg. 505; *Catlin* v. *Hoffman*, 9 id. 342.

The deed which was given up might have been recorded by Turpin at any moment. He could at any time have taken possession of the property, and exercised full and absolute control over it.

It is said, that, before the exchange, no possession had been taken under the deed, and that it had not been recorded.

Such a deed as between the parties was valid without possession or record. Gen. Stat. of Mass., ch. 151, sect. 1.

No rights of creditors had intervened when the exchange took place.

The Supreme Judicial Court of Massachusetts, in one of their leading decisions made in the year 1856, say, " The time when the record shall be made is not specially prescribed; though it must undoubtedly precede the possession by others subsequently acquiring an interest in the mortgaged property. Rev. Stat., ch. 74, sect. 5. To prevent it passing to them, i will be sufficient that the record is made at any time before such possession is taken, though it be long after the execution of the mortgage." *Mitchell et al.* v. *Black et al.*, 6 Gray, 106. *Briggs* v. *Parkman*, 2 Metc. 258; *Adams* v. *Wheeler*, 10 Pick. 199; *Seaver* v. *Spink*, 8 Nat. Bank Reg. 218; *Cragin* v. *Car-*

*michael,* 11 id. 511; *In re Wynne,* 4 id. 23; *Gibson* v. *Warden,* 14 Wall. 244.

MR. JUSTICE STRONG delivered the opinion of the court.

The only question presented by this appeal is, whether the mortgage given by the bankrupt on the thirty-first day of July, 1869, to Edward Turpin, the agent of Novelli & Co., was a fraudulent preference of creditors within the prohibition of the Bankrupt Act, and therefore void as against the assignees in bankruptcy. That it was a security given for the protection of a pre-existing debt, and that it was given within four months immediately preceding the filing of the petition in bankruptcy, are conceded facts. It may also be admitted that the bankrupt was insolvent when the mortgage was made, and that the creditors had then reason to believe he was insolvent.

The petition in bankruptcy was filed on the 22d of October, 1869. On the 15th of May next preceding that date, Bacheller, the bankrupt, who was indebted to Novelli & Co. in the large sum of $27,839 in gold, conveyed to Turpin, who was their agent, as a security for the debt, the building described in the subsequent mortgage of July 31. It was a frame building, erected upon leased ground; and Bacheller had, therefore, only a chattel interest in it. The conveyance was by a bill of sale absolute in its terms, having no condition or defeasance expressed; but it was understood by the parties to be a security for the debt due. It was in substantial legal effect, though not in form, a mortgage. Having been executed more than four months before the petition in bankruptcy was filed, there is nothing in the case to show that it was invalid. True, it was not recorded; and it may be doubted whether it was admissible to record. True, no possession was taken under it by the vendee; but for neither of these reasons was it the less operative between the parties. It might not have been a protection against attaching creditors, if there had been any; but there were none. It was in the power of Turpin to put it on record any day, if the recording acts apply to such an instrument; and equally within his power to take possession of the property at any time before other rights against it had accrued. These powers were conferred by the instrument itself, immediately on

its execution. In regard to chattel mortgages, the recording statutes of Massachusetts, enacted in 1836, provide as follows: "No mortgage of personal property hereafter made shall be valid against any other person than the parties' thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage be recorded by the clerk of the town where the mortgagor resides." Rev. Stat. 473, ch. 74. The statute contains a clear recognition of the validity of an unrecorded chattel mortgage, as between the parties to it; though no possession be taken under it. And the General Statutes of the State, enacted in 1860 (Gen. Stat. 769, ch. 151), contain the same recognition. Their language is the following: "Mortgages of personal property shall be recorded on the records of the town where the mortgagor resides when the mortgage is made, and on the records of the city or town in which he then principally transacts his business, or follows his trade or calling. If the mortgagor resides without the State, his mortgage of personal property within the State, when the mortgage is made, shall be recorded on the records of the city or town where the property then is. Unless a mortgage is so recorded, or the property mortgaged is delivered to and retained by the mortgagee, it shall not be valid against any person, *other than the parties thereto*, except as provided in the following section." The exception extends only to mortgage contracts of bottomry, or *respondentia*, to transfers, assignments, or hypothecations of ships or vessels, and to transfers in mortgage of goods at sea or abroad. Neither of these acts prescribes when the record must be made, or the possession be taken; but, when made, the instrument takes effect, as against third persons as well as between the parties, from the time of its execution, unless intervening rights have been obtained. In *Mitchell et al.* v. *Black et al.*, 6 Gray, 100, it was ruled by the Supreme Court of Massachusetts that one who had taken bills of sale of merchandise from his debtor as a security for money advanced, and who had allowed the debtor to sell portions of the merchandise in the usual course of his business as if he were the owner thereof, might take possession of it at any time in order to secure his debt; and that such taking of possession, though at a time when the

debtor was known by himself and the creditor to be insolvent, was effectual, notwithstanding the State Insolvent Law, which contained provisions very like those of the Bankrupt Act. The court held unqualifiedly that the bills of sale, absolute as they were in terms, though in fact intended only as a security, and though unattended by possession of the property, and though not placed upon record, vested a complete title in the creditor, subject only to be defeated by the discharge of the debt, or by some intervening right acquired before the possession was taken. This was a case of bills of sale, like the present, not a case of a technical mortgage. In speaking of the registration of mortgages, the court said, " The time when the record shall be made is not specifically prescribed by the statute, though it must undoubtedly precede the possession by others subsequently acquiring an interest in the mortgaged property. To prevent it from passing to them, it will be sufficient that the record is made at any time before such possession is taken, though it be long after the execution of the mortgage."

It should not be doubted, then, that the bill of sale of May 15, 1869, conveyed to Turpin all Bacheller's interest in the frame building; that it was effective for the purposes for which it was made; and, no other rights having intervened, that it was a valid security, to the extent of the value of the property, for the debt due Novelli & Co. on the 31st of July, 1869, when the mortgage impeached by the bill was made. The mortgage covered the same property. It embraced nothing more. It withdrew nothing from the control of the bankrupt, or from the reach of the bankrupt's creditors, that had not been withdrawn by the bill of sale. Giving the mortgage in lieu of the bill of sale, as was done, was, therefore, a mere exchange in the form of the security. In no sense can it be regarded as a new preference. The preference, if any, was obtained on the 15th of May, when the bill of sale was given, more than four months before the petition in bankruptcy was filed. It is too well settled to require discussion, that an exchange of securities within the four months is not a fraudulent preference within the meaning of the Bankrupt Law, even when the creditor and the debtor know that the latter is insolvent, if the security given up is a valid one when the exchange is made, and

if it be undoubtedly of equal value with the security substituted for it.    This was early decided with reference to the Massachusetts insolvent laws (*Stevens* v. *Blanchard*, 3 Cush. 169); and the same thing has been determined with reference to the Bankrupt Act.    *Cook* v. *Tullis*, 18 Wall. 340; *Clark* v. *Iselin*, 21 id. 360; *Watson* v. *Taylor*, 21 id. 378; and *Burnhisel* v. *Firman*, 22 id. 170.    The reason is, that the exchange takes nothing away from the other creditors.    It is, therefore, not in conflict with the thirty-fifth section of the act, the purpose of which is to secure a ratable distribution of the property of a bankrupt owned by him at the time of his becoming bankrupt, and undiminished by any fraudulent preferences given within four months prior thereto.

It follows that the mortgage of July 31 was not prohibited by the Bankrupt Act when it was given, and that it was valid. Hence, as it was recorded on the seventeenth day of September, 1869, pursuant to the requisitions of the State law, before any rights of the assignees in bankruptcy accrued, it cannot be impeached by them.

It has been argued, however, on behalf of the assignees, that the bill of sale of May 15 was an insufficient consideration for the mortgage, because, as alleged, there was an agreement between Bacheller and Turpin that it should not be recorded, and should be kept secret.    If the fact were as alleged, it is not perceived that it would be of any importance; for it is undeniable that the bill of sale rested on a valuable consideration, — to wit, the debt of $27,839 in gold, due to Novelli & Co.; and it is not denied that it gave to Turpin the right to take possession of the property described in it.    It was, therefore, a valuable security, even if there was an agreement not to record it.    If it be said failure to put it on record enabled the debtor to maintain a credit which he ought not to have enjoyed, the answer is that the Bankrupt Act was not intended to prevent false credits.    Its purpose is ratable distribution.    But the evidence does not justify the assertion that there was in fact any agreement that the bill of sale should not be recorded, or that possession should not be taken under it.

*Upon all points, therefore, the case is with the appellees, and the decree of the Circuit Court must be affirmed.*