## Case No. 11,224.

### PLAYER v. LIPPINCOTT et al.

[4 Dill. 125, Note, 1 16 N. B. R. 208; 5 Cent. Law J. 260.]

District Court, E. D. Missouri. Sept. 6, 1877.[2]

BANKRUPT LAW—PREFERENCE—EXCHANGE OF SECURITIES—CHATTEL MORTGAGE.

The substitution and record of a chattel mortgage correctly describing the note secured, for a prior unrecorded mortgage, which incorrectly stated such note, *held* not to be an illegal preference, but a simple exchange of securities, within the rule laid down in Sawyer v. Turpin, 91 U. S. 114.

[Cited in Re Oliver, Case No. 10,492.]

This was a bill in equity [by Preston Player against Lippincott & Co. and others] to set aside a chattel mortgage. The bill alleged the bankruptcy of B. R. Lippincott, by creditors' petition, filed January 9th, 1877; that Charles Lippincott and James Patterson, as co-partners under the style of Charles Lippincott & Co., and doing business in Philadelphia, were creditors of B. R. Lippincott (a brother of Charles), a manufacturer of soda water in St. Louis, in the sum of $14,480.92; that B. R. Lippincott executed a chattel mortgage to secure a note for said amount, to his brother's firm, on his stock and fixtures, extracts in syrup-room, etc., tools and stock in copper shop, boilers, machinery, and apparatus used by him in the manufacture and sale of soda water; that said note and mortgage were dated August 28, 1876; that the mortgagor and mortgagees agreed that said mortgage should not be placed on record, except in the event that B. R. Lippincott's creditors should press their claims against him; that, pursuant to such agreement, said mortgage was not placed of record until B. R. Lippincott's "insolvency was about to become notoriously public, namely, on the 18th day of November, 1876, when the same was filed and recorded;" that a part of the property mortgaged was stock in trade of the mortgagor, of which he "kept continually selling portions," and replenishing the same with new purchases, and that it was the agreement, intention, and purpose of the mortgagor and mortgagees that the mortgagor should remain in possession of the property mortgaged, carry on his usual business, and make sales of portions of all the property mortgaged, as the exigencies of his business might require; that the mortgagor did so remain in possession of said property and carry on his business until the bankruptcy. There were the usual allegations as to knowledge on the part of the defendants of the mortgagor's financial condition, and purpose to evade the provisions of the bankrupt act [of 1867 (14 Stat. 517)]. The answer admitted the bankruptcy, the indebtedness of bankrupt to defendants as co-partners, in the amount alleged, the execution of the note and mortgage; but denied any agreement or understanding that the mortgage should not be placed of record except in case of the imminent insolvency of the mortgagor. The answer further denied any agreement or intention on the part of defendants, that the mortgagor should sell or dispose of, in the conduct of his business, any part of the mortgaged property, and denied that he had sold any part thereof. The mortgage contained the following stipulations: "The parties hereto agree that, until condition broken, said property may remain in the possession of Benjamin R. Lippincott, but after condition broken, the said Charles Lippincott & Co. may, at their pleasure, take and remove the same, and may enter into any building or premises of the said Benjamin R. Lippincott, for that purpose." The answer further denied any knowledge on the part of the defendants of the mortgagor's insolvent condition, either on the 28th of August or the 18th of November. The defendants, in explanation of the delay in recording the mortgage, averred that at the date of the execution of the note and mortgage, defendant Patterson was in St. Louis, on his annual visit to make a settlement with B. R. Lippincott, and took the mortgage with him to Philadelphia for the purpose of exhibiting the same to his partner, before having it placed of record; that on reaching Philadelphia, it was for the first time discovered by Charles Lippincott that, in copying the note into the mortgage, the word "four" had been written instead of "fourteen," in stating the amount of the note, though the amount of the debt had been otherwise correctly stated; that B. R. Lippincott was then daily expected in Philadelphia, to visit the centennial, and it was determined to hold the mortgage for correction until he should come; that B. R. Lippincott did not reach Philadelphia until early in November, and while he was there a new mortgage of the same date, and, with the exception of the error in copying the note, an exact copy of the first, was prepared, signed in Philadelphia by defendant's firm and B. R. Lippincott, and was taken by B. R. Lippincott to St. Louis for acknowledgment and record, and was acknowledged by him in St. Louis, November 15th, and recorded on the 18th.

Stewart & Hermann, for complainant, cited: Claflin v. Rosenberg, 42 Mo. 439; State v. King, 44 Mo. 242; Allen v. Massey [Case No. 231]; Bryson v. Penix, 18 Mo. 13; Balke v. Swift, 53 Mo. 86; Feurt v. Rowell, 62 Mo. 525; Harris v. Exchange Bank [Case No. 6,119]; Robinson v. Robards, 15 Mo. 459; Walter v. Wimer, 24 Mo. 63; Eaton v. Perry, 29 Mo. 96; Voorhis v. Langsdorf, 31 Mo. 451; State v. Tasker, Id. 445; Lodge v. Samuels, 50 Mo. 204.

---

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

2 [Affirmed in Case No. 11,223.]

E. T. Allen and N. Oscar Gray, for defendants, cited: In re Wynne [Case No. 18,117]; Sawyer v. Turpin, 91 U. S. 114; Miller v. Jones [Case No. 9,576]; Field v. Baker [Id. 4,762]; Burnhisel v. Firman [22 Wall. (89 U. S.) 170]; Cragin v. Carmichael [Case No. 3,319]; National Bank of Fredericksburg v. Conway [Id. 10,037]; Hicks v. Williams, 17 Barb. 523; Thompson v. Van Vechten, 6 Bosw. 373.

TREAT, District Judge. The decision in the case of Sawyer v. Turpin, 91 U. S. 114, is conclusive on nearly every point in this case. The prior unrecorded mortgage for which the latter was substituted, would not be upheld if the rights of intervening mortgage creditors or vendees had arisen; but in the absence of such intervening rights, the last mortgage rests for its validity on the first. The facts connected with the two mortgages may be used to throw light on the bona fides of the parties. If the second is, as to date, to be referred to the first mortgage, for which it was substituted, then it was not made within two months of proceedings in bankruptcy. There is nothing on its face to make either mortgage void. Under the statutes of Missouri, it could have no effect as to the creditors until recorded. If any of the bankrupt's creditors had pursued the property between August and November 18th, their demands might have prevailed over the alleged rights of the mortgagees; but no such rights existed, or, if so, were asserted. The intimation of the supreme court of Missouri, that a mortgage should be recorded within a reasonable time, has reference to cases where intervening interests arise. There is nothing on the face of either mortgage, or in the evidence, showing that the mortgagor was to have the right to sell or consume the mortgaged property for his own benefit, or, in other words, that the conveyance was for his benefit, and, therefore, void. The bill is dismissed with costs. Bill dismissed.

[On appeal to the circuit court the decree of this court was affirmed. Case No. 11,223.]