## Case No. 4,000.

### In re DORAN.

[5 Cent. Law J. 260.] [1]

District Court, E. D. Missouri. Sept. 8, 1877.

BANKRUPT LAW—FRAUDULENT PREFERENCE — EXCHANGE OF SECURITIES.

In this case the bankrupt, a merchant, doing business with a bank, had from time to time

[1] [Reprinted by permission.]

overdrawn his account with the knowledge of the cashier, but without the knowledge of any other officer of the bank. To secure these overdrafts the cashier procured from him a bill of sale of a portion of his stock in-trade, which was not recorded, nor accompanied with possession, and the bankrupt continued his business as usual. This was more than two months prior to the commencement of the proceedings in bankruptcy. Subsequently, and within two months of the commencement of proceedings in bankruptcy, the overdrafts were disavowed by the managers of the bank, who, to secure the bank, procured a new bill of sale, caused it to be put on record, and took possession of the goods. Held, that although this was clearly a fraudulent preference within the meaning of the bankrupt law [of 1867 (14 Stat. 517)], yet, under the rule of Sawyer v. Turpin, 91 U. S. 114, the transaction took effect by relation to the first bill of sale, and this having been given more than four months prior to commencement of proceedings in bankruptcy, the second bill of sale became a valid security.

TREAT, District Judge. The bank claims, as a secured creditor, the proceeds of certain assets pledged to it to meet its demands against the bankrupt. The facts, succinctly stated, are as follows: Doran, the bankrupt, doing business with the creditor (the bank) was in the habit of overdrawing, with the knowledge of the cashier, but of no other officer of the bank. The cashier who had tolerated such overdrafts, being anxious for security, procured, March 3, 1876, a bill of sale of goods in the store of the bankrupt for articles named in said bill. Said articles were never separated from the general stock, nor was said bill of sale recorded, though really a chattel mortgage. The bankrupt continued his business as theretofore. The principal managers of the bank having learned of said overdrafts, and of the facts concerning said bill of sale, insisted, on the 26th of May, upon a settlement with adequate securities. The debtor could not at that time pay what he owed. It was obvious that some of the directors knew his condition to be critical, and were eager for security. An arrangement was made whereby he gave a new bill of sale for certain goods of which the creditors took possession, and these are the goods, the title to which is in dispute. The creditor must have known from overdrafts for months that the debtor was not in a solvent condition. Those overdrafts were in the nature of past-due commercial paper. Being anxious to secure the same, the bill of sale, March 3, was procured. That bill was unaccompanied with delivery, separation of the goods from the general stock, or any record thereof. When the officers of the bank learned of the overdrafts and of the bill of sale, unaccompanied by delivery, they became anxious to have the indebtedness of the bankrupt evidenced more formally, and the securities therefor in due shape. Hence they caused the bill of sale, the validity of which is in question, to be made, and took possession of the goods enumerated in it. The latter bill of sale was to secure the past indebtedness mentioned, together with a further present advance. The

sole proposition submitted is as to so much as relates to the past indebtedness. The bank had reasonable cause to believe the debtor insolvent. It was anxious to secure the indebtedness. It took out of the store current goods as security. It knew that the debtor had overdrawn for months (equivalent to over-due paper), and could not meet his obligations. The nature and quality of its collaterals show knowledge of the debtors' doubtful condition, and its course in the matter that it knew the necessity of securing a preference to avoid loss. The result is that when, in May, this security was obtained, the bank knew the insolvent condition of its debtor, and that, by taking out of his stock of goods the security relied upon, it was enabling him to practice a fraud on the bankrupt act—that is, to secure an advantage which the law forbade. The conclusion reached by the register would be corect, if the doctrine announced in Sawyer v. Turpin, 91 U. S. 114, did not control. That case, and the views of the United States supreme court therein stated, must be considered conclusive of this case, inasmuch as the facts are substantially the same. The proof of the debt must therefore stand as secured for the whole amount; or in other words, the proceeds of the collateral must be applied to the payment of the bank's entire demand, instead of a part thereof.