## Case No. 17,176.

### WARING v. BUCHANAN et al.

[19 N. B. R. 502.] [1]

District Court, S. D. New York. May 27, 1879.

BANKRUPTCY — AVOIDANCE OF GENERAL ASSIGNMENT—EFFECT—INTERVENING LEVIES —UNLAWFUL PREFERENCE.

[1. Upon the avoidance of a general assignment as in violation of the bankrupt law, the title of the assignee in bankruptcy dates back to

---

[1] [Reprinted by permission.]

the time of such voluntary assignment, so as to avoid an intermediate levy of execution.]

[2. If the property received by a creditor on an exchange between him and the bankrupt is of much greater value than that surrendered by him, the transaction is to be deemed a preference, if an original transaction would, under the circumstances, be so treated.]

[3. A creditor of the bankrupt, who had been in business with him, and knew the condition of his affairs, surrendered notes of the bankrupt held by him, and secured by chattel mortgage, and took a new note for the same amount, payable on demand. Payment was demanded the same day, and, this being refused, suit was immediately commenced. No defense was made, and judgment was entered for the creditor, who immediately issued execution; and a levy was made on all the property of the bankrupt, including a large stock of goods not covered by the mortgage. These goods had been purchased immediately after the change of securities, and the amount of the purchase was much larger than required by the condition of the business, and the levy was made immediately after the purchase. *Held*, that the change of securities was evidently a fraudulent preference.]

L. Henry, for complainant.
W. D. Dickey, for defendants.

CHOATE, District Judge. This is a suit in equity brought by the assignee in bankruptcy of one Burke to set aside, as void under the bankrupt law, a general assignment made by Burke to the defendant Buchanan January 2, 1878, and also the levy of an execution on a judgment against Burke in favor of Buchanan, which levy was made on the same day that the assignment was executed, but prior to the delivery thereof, upon all the stock in trade, furniture, and fixtures in Burke's place of business, a confectionery store and bakery in the city of Newburgh. The bankruptcy proceedings were commenced by creditors' petition January 18, 1878. The suit is brought against Buchanan, the voluntary assignee and judgment creditor, who claims to hold the property also by the levy of his execution, Reuben R. Carr, the sheriff of Orange county, one Hallock, the assignee of Buchanan's judgment, who claims to have paid five hundred dollars therefor, and one Skidmore, who recovered a judgment against Burke, and whose execution was put in the sheriff's hands January 16, 1878, under which it is claimed that a levy was made on that day. Skidmore was served but did not appear. The other defendants appeared and defend the suit.

Prior to May, 1877, Buchanan owned and carried on this bakery and confectionery store. At that time Burke purchased one-half interest in it for four thousand dollars, giving two thousand nine hundred dollars in cash, and a bond for the balance, secured by a mortgage on other property belonging to his wife. They then carried on the business together. On the 11th day of September, 1877, Burke bought out Buchanan's remaining interest for four thousand dollars, for which he gave four notes of one thousand dollars each, payable in four, nine, twelve, and eighteen months from September 11th, secured by chattel mort-

gage on the tools, furniture, and fixtures of the establishment. They had cost about two thousand five hundred dollars a year before. After this purchase, Buchanan continued in Burke's employ at a salary, and down to the date of the assignment, and levy in question, January 2, 1878, he was entirely familiar with Burke's affairs. On the 23d of November, 1877, Buchanan surrendered the chattel mortgage and two of the notes having the longest time to run, and Burke gave him a new note for two thousand dollars on demand. Payment was demanded the same day, and, the same being refused, a suit was commenced thereon the same day. Burke made no defence, and December 31, 1877, judgment was entered on his default for two thousand and thirty-five dollars. Execution was immediately issued, and January 2, 1878, the sheriff levied under the same upon all his visible property of Burke, including not only the property covered by the chattel mortgage, but a large stock of goods, most of which were purchased by Burke in December, 1877. Later in the same day, the general assignment was executed. It covered all of Burke's property, and was for the benefit of all his creditors, without any preference. Buchanan took immediate possession of all the property. The sheriff appointed him his keeper, and authorized him to carry on the business and work up the materials on hand, and he continued to do so till January 19, 1878, when he was stopped by injunction from this court. During this time he admits having sold goods to the amount of about five hundred and forty-six dollars. Since the service of the injunction, by consent of all parties the property has been sold by the sheriff, and the proceeds, less certain amounts deducted for his fees and disbursements, have been deposited subject to the order of this court. The whole proceeds, as returned by the sheriff, are two thousand one hundred and thirteen dollars and forty-one cents. His bill of fees, etc., amounts to seven hundred and five dollars and eighty-four cents. The proceeds of the property included in the chattel mortgage were about two hundred and sixty dollars.

The general assignment was clearly void as against the assignee in bankruptcy, under the well-settled rule of construction of the bankrupt law as applied in this court. And the avoidance of the assignment carries the title of the assignee in bankruptcy back to the date of the voluntary assignment, so as to avoid the intermediate levy of the defendant Skidmore. In re Beisenthal [Case No. 1,236].

The question whether the defendant Buchanan's levy on the 2d of January is to be set aside, depends upon the question whether the transaction of November 23d, surrendering the two notes and chattel mortgage for the demand note, is to be regarded as an unlawful preference. Upon a careful consideration of all the testimony, I think this transaction is clear-

ly shown to have been a fraudulent preference, within the statute (Rev. St. § 5128). It is well settled that a mere change of securities or other exchange of property between the creditor and the bankrupt, though within the period and under circumstances of knowledge as to the debtor's condition which would make an original transaction a preference, cannot be impeached as such, provided that the exchange is really and in good faith what it purports to be. Sawyer v. Turpin 91 U. S. 114. But, if the property received is of much greater value than that surrendered, it seems clear that the transaction must be obnoxious to the objection that it is a preference if an original transaction at the same time and under the same circumstances would be so. In the present case the avowed purpose of taking the demand note, instead of the time note secured by chattel mortgage, was to effect a change of securities that is to give the creditor, instead of his chattel mortgage, the advantage of a levy on the debtor's property subject to execution. The security he was to obtain was not within the expectation of either party to be restricted to the property covered by the chattel mortgage, which, though nominally worth as much as the new note, was not, if sought to be applied to the payment of the debt, nearly sufficient for that purpose. The bringing of an action at once, and the placing of the creditor at the earliest time consistent with fair appearances in a position where he could levy, was unquestionably part of the intention of both parties at the time of the substitution. Without such further proceedings on the new note, it would have been no security at all, and the acts of the parties leave no room for doubt that the immediate demand and the immediate commencement of the action, so that after twenty days the creditor could at any moment perfect his lien by execution, were parts of the arrangement between them, of which the surrender of the chattel mortgage and the time notes, and the giving of the demand note, constituted the first steps. The transaction was out of the usual course of the debtor's business, and so presumptively fraudulent under the statute, but independently of the statute, which throws the burden of proof on those who affirm the good faith of the transaction. there are many and abundant badges of fraud connected with it. Buchanan was intimately acquainted with Burke's business affairs up to and after the 23d of November. Burke was undoubtedly insolvent at that time, and Buchanan must have known it. I think the evidence shows also that, after this change of securities, Burke, at the suggestion of Buchanan, made large purchases,—much larger than the nature and condition of his business required or warranted. The proper conclusion, I think, from the evidence, is that they sought thereby to accumulate a sufficient stock of goods to satisfy Buchanan's execution with. Burke purchased over nine thousand dollars worth of goods, mostly on credit, in the month of December. No sufficient explanation of this is given. Certainly, what is disclosed about the amount of business

he had reason to believe he could do does not justify the conclusion that it was for any legitimate business purpose. By this accession of property, Buchanan was enabled to secure his judgment, and he appears to have waited just long enough after the 12th of December, when he might have entered his judgment, to enable Burke thus to replenish his stock. The correspondence between Burke and his creditors shows that the existence of the chattel mortgage had been the means of injuring his credit, but the subsequent acts of the parties were too plainly directed to giving Buchanan an advantage over other creditors, and too well adapted to that purpose, and too regardless of all other interests, to allow any credit to be given to the pretence made that the only reason for changing the security was because Burke's credit was thus injuriously affected, and that they had no other purpose in view than giving him a better credit, and enabling him to go on with his business. It is urged that the chattel mortgage was good security for the two thousand dollars, but the nature of the property was such that, although it cost more than that, it would realize very little if sold and separated from the establishment, as the result showed, and undoubtedly at that time Buchanan desired to realize his claim against Burke.

The seizure of the bankrupt's property under Buchanan's execution must therefore be declared void as an unlawful preference, and Buchanan must account for the property which came into his possession. The sheriff's bill has never been allowed or passed on by this court, and it contains several questionable items. A decree for an account must be entered against him. The defendant Hallock took nothing by his assignment from Buchanan, but as it does not appear that he ever received any of the property or its proceeds, he is not obliged to render an account. Decree accordingly.

<hr>

WARLEY, The ELLA. See Cases Nos. 4,370–4,374.

WARMOUTH (KELLOGG v.). See Case No. 7,667.

<hr>