CURRY and others, Assignees, etc., v. McCAULEY and others.

(*District Court, W. D. Pennsylvania.* October Term, 1879.)

1. MORTGAGE—PREFERENCE—OPERATION AND EFFECT.

In Pennsylvania a mortgage, upon delivery, becomes *eo instanti* effective; therefore, an assignee in bankruptcy cannot avoid a mortgage given by way of preference, if it was delivered more than two months before the proceedings in bankruptcy against the mortgagor were commenced, although not recorded until within the two months.

2. CREDITOR—PRIVILEGE AS TO COUNTER-SECURITIES.

It is the privilege of the creditor to avail himself of counter-securities, given to and held by the surety, but the law does not force them upon him against his consent. If he is satisfied with his original security he may stand on it.

3. SAME—WHEN MAY PROVE AS UNSECURED.

Where the surety takes a counter-security for his own indemnification, and the creditor is not a party to the transaction, and has not adopted the act of the surety, the creditor may prove in bankruptcy as an unsecured creditor, and such proof does not release or affect the individual liability of the surety to the creditor.

4. EQUITY—REMEDY AT LAW—OBJECTION JURISDICTIONAL.

If it appears on the face of a bill in equity that the plaintiff has a plain, adequate, and complete remedy at law, the objection, although not raised by the pleadings, being jurisdictional, cannot be overlooked by the court, and the bill will be dismissed.

In Equity.

*George M. Reade* and *George Shiras, Jr.*, for complainants.

*Samuel S. Blair, Benj. L. Hewit, S. Schoyer, Jr.*, and *West McMurray*, for respondents.

ACHESON, D. J. On or about May 1, 1874, William M. Lloyd, Thomas McCauley, Sylvester C. Baker, and John Lloyd executed and delivered to Dr. Alexander Johnston their joint and several bond of that date in the penal sum of $100,000, conditioned for the payment by the obligors to Dr. Johnston of $50,000 on or before May 1, 1880, with interest payable semi-annually. Although the fact does not appear on the face of the bond, the evidence in this case shows that the consideration therefor was a debt of $50,000 due from William M. Lloyd to Dr. Johnston. The latter died December 15, 1874. He bequeathed this bond to his daughter Mrs. Jane Freed, to whom Dr. Johnston's executors assigned the bond, December 13, 1875.

After Dr. Johnston's death William M. Lloyd executed to said Thomas McCauley and Sylvester C. Baker a mortgage of certain real estate, dated and acknowledged May 8, 1875, and duly recorded September 17, 1875. This mortgage recites that McCauley and Baker are sureties for William M. Lloyd in said bond, and that the mortgage is given "as well to secure the parties of the second part, [McCauley and Baker,] and save them harmless against said suretyship, as in consideration of one dollar," etc. The defeasance clause reads: "Provided, etc., if the said William M. Lloyd, etc., shall and do well and truly pay the interest aforesaid on said bond to the said Alexander Johnston, his heirs, executors, etc., at the times therein stated, and the principal sum therein stated, and save the said parties of the second part harmless from the payment thereof as sureties aforesaid,

then," etc. It does not appear that Dr. Johnston ever solicited the giving of such mortgage; nor were his executors or Mrs. Freed in any manner connected with the giving of it. Their knowledge of it was acquired long afterwards. It was a transaction wholly between William M. Loyd and his sureties.

On November 11, 1875, a creditors' petition in bankruptcy was filed against William M. Loyd, upon which he was subsequently adjudicated a bankrupt. Before the commencement of this suit Mrs. Freed, as an unsecured creditor, proved her debt upon said bond against the estate of the bankrupt, and, since the bill was filed, received a dividend of $2,341.20.

John Lloyd, on November 11, 1872, by permission of William M. Lloyd, without any express agreement as to payment of rent, took possession of the real estate covered by the subsequent mortgage to McCauley and Baker, and held possession until May 15, 1879.

The bill in this case is by the assignees in bankruptcy of William M. Loyd against Thomas McCauley, Sylvester C. Baker, and John Lloyd, Stephen Johnston, and J. Lowry Johnston, executors of Dr. Alexander Johnston, deceased, Mrs. Jane Freed, and the bankrupt. The bill charges that the said mortgage is a fraudulent and unlawful preference under the bankrupt law, and the first prayer is that it be decreed to be null and void.

The bill alleges that the mortgage bears a false date, and was not signed and acknowledged on May 8, 1875, as it purports to have been, but was executed within the period of two months prior to the filing of the petition in bankruptcy; or, if executed and delivered sooner, was kept from record until September 17, 1875, in pursuance of the fraudulent agreement and conspiracy between the parties to the mortgage. These allegations are all denied by the answers, and the findings of the master upon the questions of fact are against the plaintiffs. He reports that the mortgage was executed and acknowledged the day of its date, and delivered more than two months prior to the filing of the petition in bankruptcy, and that there was no such fraudulent conspiracy or agreement as alleged. I have very carefully read and considered the evidence, and have no difficulty in holding that the exceptions filed by the plaintiffs to this part of the master's report have no substantial basis. I think it is satisfactorily established that the mortgage was signed, acknowledged, and delivered on May 8, 1875. Under the pleadings and evidence no other finding is allowable. If there was an agreement to keep the mortgage secret and withhold it from record, it would, it seems, be a matter of

no importance. *Sawyer* v. *Turpin*, 91 U. S. 121. But I see no evidence to justify the conclusion that there was any such agreement or understanding.

The master, however, finds that at the date of the mortgage William M. Lloyd was insolvent, and was known so to be by himself and Thomas McCauley, Sylvester C. Baker, and John Lloyd, and that said mortgage was given and intended as a preference. It is contended, therefore, that the mortgage must be adjudged invalid under the bankrupt law, because not recorded two months prior to the filing of the petition in bankruptcy. But it is the settled law of Pennsylvania that the recording of a mortgage of real estate is not essential to its validity. As between the parties it becomes effective *eo instanti* upon delivery. And an unrecorded mortgage is held to be good against an assignee for the benefit of creditors, the heirs of the mortgagor, and every one claiming under the mortgagor who had actual notice thereof before his rights attached. *Wolf* v. *Eichelberger*, 2 Pen. & Watts, 346; *Mellon's Appeal*, 32 Pa. St. 121, 129; *Britten's Appeal*, 45 Pa. St. 178; *Spackman* v. *Ott*, 65 Pa. St. 131; *Tryon* v. *Munson*, 77 Pa. St. 250; *McLaughlin* v. *Ihmsen*, 85 Pa. St. 364. Such being the law of the state, the mortgage here cannot be avoided by the assignees in bankruptcy for the cause assigned by them. *In re Wynne*, 4 N. B. R. 23; *Scarer* v. *Spink*, 8 N. B. R. 218; *Gibson* v. *Warden*, 14 Wall. 248, 249; *Sawyer* v. *Turpin*, 91 U. S. 118, 119; *Stewart* v. *Platt*, 101 U. S. 731; *Clark* v. *Iselin*, 21 Wall. 377; *In re Swenk*, 9 FED. REP. 643. To these might be added other authorities which the master cites.

Down to this point I think the master was entirely right; but I am constrained to dissent from his conclusion touching the effect of Mrs. Freed's proof of debt and acceptance of a dividend. The master being of opinion that the mortgage given to the bankrupt's sureties operated to make Mrs. Freed a secured creditor, within the meaning of section 5075, Rev. St., and that by proving her debt as an unsecured claim, and receiving a dividend thereon, she had released the mortgage security, and thereby discharged the sureties from their personal liability upon said bond, recommends a decree that the mortgage be satisfied of record, and that Mrs. Freed be perpetually enjoined from suing Thomas McCauley, Sylvester C. Baker, and John Lloyd upon said bond. The master adopted, in their length and breadth, the views advanced by Judge Hall in *Re Jaycox*, 8 N. B. R. 241, overlooking the caution given by that learned jurist himself, at the close of his opinion, that it discussed questions

not necessary to be then decided. Regarding the actual ruling, that case is by no means an authority for a decree so disastrous to Mrs. Freed as the one proposed.

It is undoubtedly a well-recognized principle that the creditor is equitably entitled to the benefit of all counter-securities taken by the surety for the payment of the debt or his own indemnification. Some of the authorities speak of a trust subsisting under such circumstances; others, of a *quasi* trust. The right itself, however, is a purely equitable one in favor of the creditor, of which he may avail himself if he will. But if he is not an actual party to the transaction, and has in nowise assented to the taking of such securities, he is under no obligation to assume any responsibility in respect thereto, and is not bound to resort to them. It is the creditor's privilege to avail himself of counter-securities given to and held by the surety, but the law does not force them upon him against his consent. If satisfied with his original security he may stand on it.

The original and primary object—indeed, it would be more proper to say the sole object—of William M. Lloyd in giving the mortgage in question was to indemnify the parties who had executed the bond as joint obligors with him for his accommodation, and who, therefore, stood to him in the relation of sureties. As we have seen, the mortgage was executed nearly five months after Dr. Johnston's death, and neither his executors nor Mrs. Freed had any connection near or remote with the taking of it. Nor did they subsequently adopt the action of the sureties. Mrs. Freed, therefore, had no mortgage of the real estate of the bankrupt when she proved her debt, (*Weed* v. *Nelson*, 9 Gray, 55;) and she had the right to prove as she did. Id.; *Provident Institution, etc.*, v. *Stetson*, 12 Gray, 27. That she was an unsecured creditor was expressly decided by my predecessor, the late Judge Ketcham, in a contest which arose at an early stage of the bankruptcy proceedings upon the question whether there was a statutory quorum of petitioning creditors.

What other safe course was open to Mrs. Freed than the one she pursued? The validity of this mortgage has been constantly denied by the assignees, and this bill charges it to be a fraudulent and void preference, and prays that it be so decreed. And even yet the assignees maintain that it is a worthless security to everybody.

By proving her debt in bankruptcy as an unsecured claim, Mrs. Freed may have waived her equitable right to seek the benefit of the mortgage security which the bankrupt's sureties hold, (*In re Jaycox*,

*supra;*) but assuredly she did not release them from their personal liability as obligors in the bond to Dr. Alexander Johnston. Her course of action has in nowise hurt them, and her rights against them remained unimpaired. *Merchants' Nat. Bank* v. *Comstock,* 11 N. B. R. 235. That case is directly in point, and the lucid opinion of Judge Allen (who there speaks for the whole court of appeals of New York) convincingly shows that the proposition that the personal liability of a surety is released by reason of proof in bankruptcy made in the manner and under such a state of facts as here, is fallacious. This mortgage, therefore, must stand for the indemnity of the bankrupt's sureties in accordance with the intention of the parties thereto.

One of the prayers of this bill is that John Lloyd account for the rents of said real estate during the period of his occupancy. His possession was personal to himself and unconnected with the mortgage. The other defendants, therefore, had no interest whatever in the controversy touching his occupancy, and clearly the bill might have been demurred to for multifariousness. But this part of the bill is obnoxious to a more radical objection. The plaintiffs having a plain, adequate, and complete remedy at law against John Lloyd, if liable for the use and occupation of these premises, are not entitled to equitable relief. This objection, being jurisdictional, cannot be overlooked by the court, although not raised by the pleadings. *Baker* v. *Biddle,* Bald. 394; *Hipp* v. *Babin,* 19 How. 278; *Parker* v. *Minnipiseogee Co.* 2 Black, 545; *Oelrichs* v. *Spain,* 15 Wall. 228. If, as has been suggested, the right of the assignees to bring an action at law is now barred by the two years' statutory limitation, it is unfortunate, but this is no justification for retaining a bill in a matter over which the court has no equitable cognizance.

Let a decree be drawn dismissing the bill, with costs to be paid out of the bankrupt's estate.