SHARP (GARDNER v.). See Case No. 5,236.

---

## Case No. 12,709a.

### SHARP v. PHILADELPHIA WAREHOUSE CO.

[19 N. B. R. 378;[1] 9 Reporter, 572.]

Circuit Court, E. D. Pennsylvania. Feb. 10, 1880.

BANKRUPTCY — PREFERENCES — FRAUDULENT TRANSFER OF PROPERTY.

1. Where the title to property is in the party who has made advances thereon, the delivery of the possession thereof, subsequent to the failure of the bailee, is not in conflict with the

---

[1] [Reprinted from 19 N. B. R. 378, by permission.]

terms or the spirit of the bankrupt act [of 1867 (14 Stat. 517)].

2. The exchange of goods. covered by a warehouse receipt, in the warehouse of the vendor, for others of equal or less value, within four months prior to the filing of a petition in bankruptcy, is allowable, and not in conflict with the thirty-fifth section of the bankrupt act.

3. The transfer of merchandise, however. by the bankrupts, after their insolvency. in place of goods previously abstracted (although honestly intended). is a preference within the terms as well as the spirit of the act.

4. Where there is no fraud, the assignee of a bankrupt firm is estopped from denying the validity of warehouse receipts, issued by the bankrupts.

2 [Equity. The bill in this case, filed by the assignee in bankruptcy of Stokes & Co., set up that between July. 1874, and January 16, 1878, Stokes & Co. issued receipts for goat skins and sumac, purporting to be stored upon the premises of Stokes & Co.; that the holders of said receipts obtained from defendant loans, pledging said receipts as security therefor; that at the time of the advances an agent of defendant examined the goods, ascertained that they corresponded with the receipts, and set them apart, marking them with the defendant's mark; that besides these advances, about December 29, 1877, defendant loaned to the bankrupts $30,000 on the security of certain goods in the bankrupts' possession, taking a lease from them of their cellar at the nominal rent, in order to evade the law of Pennsylvania as to the necessity of possession to establish a lien on personalty; that goods were placed in the cellar without any notorious change of possession to indicate any change of ownership: that goods were stored in the cellar which were not included in the security, and other goods, supposed to be included therein, were not in said cellar; that Stokes & Co. failed about January 19. 1878; that two days afterwards defendant made an examination of the goods for which it held receipts. as well as those in the cellar, on which the advances had been made, and discovered great deficiencies. whereupon defendant put a watchman in charge of the premises until January 24th. when a lease of the premises was executed by Stokes & Co. to defendant for nine months at the inadequate rent of $50 per month. whereupon defendant entered and took possession of the premises and all the goods; that at the time there was on the premises a large amount other than those attempted to be pledged by the bankrupts; that the assignee. plaintiff, had refused the rent and demanded possession of the premises and goods. which defendant refused. claiming to hold certain of the goods on the premises as securities substituted for the goods mentioned in the receipts: that defendant had delivered some of the substituted goods to the pledgors of the receipts on the surrender thereof. and payment of the advances thereon. had sold others and claimed to hold yet others as subject to the lien for the loan made in December. The bill prayed a cancellation of the leases of December 29, 1877. and January 24, 1878; that the pledge of December 29, 1877, be declared void as to the plaintiff; that defendant be restrained from interfering with the plaintiff's possession of the bankrupt's premises, from removing goods therefrom, and be compelled to make discovery and to account for all goods removed since January 24, 1878, and to deliver to plaintiff the goods still stored on the premises. The evidence showed substantially the facts alleged in the bill, and that defendant made the advances with knowledge that the goods for which the receipts were issued had been purchased in some cases on the same day or the day before from the bankrupts; that the goods were left as they stood when sold to the persons to whom defendant advanced money on the receipts; and that a large part of these goods were afterwards sold by the bankrupts and sent away. It appeared by the record in bankruptcy that the petition in bankruptcy was filed February 22, 1878, and an adjudication of bankruptcy made March 27, 1878.

[S. F. Hollingworth and R. L. Ashhurst (with them, S. H. Alleman), for plaintiff.

[As to the goods sold by E. & C. Stokes, the sale was fraudulent in law, and void as to the creditors of the vendor, because there was no change of possession, although they were capable of actual delivery. Clow v. Woods, 5 Serg. & R. 275; McKibbin v. Martin. 14 P. F. Smith [64 Pa. St.] 352; note to Twyne's Case, 1 Smith, Lead. Cas. p. 39, with supplement in 18 Am. Law Reg. 137; Streeper v. Eckart, 2 Whart. 302; Cadbury v. Nolen, 5 Barr [5 Pa. St.] 320; Dunlap v. Bournonville, 2 Casey [26 Pa. St.] 72; Milne v. Henry, 4 Wright [40 Pa. St.] 352; Brown v. Keller, 7 Wright [43 Pa. St.] 104; Steelwagon v. Jeffries, 8 Wright [44 Pa. St.] 407; Barr v. Reitz. 3 P. F. Smith [53 Pa. St.] 256; Billingsley v. White. 9 P. F. Smith [59 Pa. St.] 464; Davis v. Bigler, 12 P. F. Smith [62 Pa. St.] 242; Trunick v. Smith, 13 P. F. Smith [63 Pa. St.] 18. The defendant knew that the goods had been purchased from the bankrupts, and that there had been no actual or constructive delivery. hence it was cognizant of the fraud. The defendant. having advanced money on the receipts held by vendees. whose title to the goods were known to it to be fraudulent. only acquired a lien subject to the rights of creditors. and took no better title than the vendees. Decan v. Shipper. 11 Casey [35 Pa. St.] 239; Transportation Co. v. Steele. 20 P. F. Smith [70 Pa. St.] 188; The Idaho. 93 U. S. 575; Abb. Shipp. 536; Vertue v. Jewell. 4 Camp. 31; Benj. Sales, § 866; 2 Kent. Comm. 557; Cuming v. Brown. 9 East, 506. The act of July 13, 1866 [14 Stat. 98] does not apply, because E. & C. Stokes were not warehousemen. but dealers: hence their receipts are not warehouse receipts, even assuming warehouse re-

ceipts to be of the nature of bills of lading. Shepardson v. Cary, 29 Wis. 34. The lien of the defendant was not made better by the possession obtained after the failure. Carpenter v. Mayer, 5 Watts, 483; Casey v. Cavaroc, 96 U. S. 467.]

[George Junkin, contra.] [3]

BUTLER, District Judge. Stokes & Co. were extensively engaged in the importation and sale of goat skins and sumac, in the city of Philadelphia, between July, 1874, and February, 1878. From time to time they issued "warehouse receipts" for such merchandise, representing the same to be stored with them, the holders of which receipts obtained advances thereon from the defendants. The merchandise had been sold by Stokes & Co. to the holders of the receipts, who had left it on storage—excepting only that covered by a receipt held by German Smith, which was for goods sent to the store on his account. The bill states that "at the time the advances were made by the defendants the goods were examined by their agent, to see that they corresponded with those called for by the warehouse receipts, were placed in separate lots, and identified by a tag of the company." Among the advances so made by the defendants was one to George W. Hummel & Co., for thirty-two thousand dollars, on receipts covering the last six items specified in the plaintiff's Exhibit A, accompanying his bill. In December, 1878, Hummel & Co. having resold these goods to Stokes & Co., subject to the defendant's claim upon them, it was arranged between Stokes & Co. and the defendants that the loan should be reduced to thirty thousand dollars; that the latter should lease from the former the cellar of the store, deposit the goods therein, and take the keys. This arrangement was carried into effect on the 20th day of the month. The goods pointed out by Stokes & Co., when the defendants' agent called with the German Smith receipt, were not, in part, those specified in it, though similar in kind. On the 18th of January, 1878, Stokes & Co. failed to meet their business engagements, and, as subsequent events show, were insolvent. On the 24th of the same month the defendants took a lease of the premises, where the merchandise covered by the receipts which they held were stored, and entered into possession. They then discovered that a large part of the property had been fraudulently abstracted and disposed of by Stokes & Co., who, to meet the claim made on this account, handed over other merchandise to the defendants, worth about two thousand three hundred dollars. On the 22d of February following, a petition was filed against Stokes & Co., by creditors, and on the 27th of the same month they were adjudged bankrupts.

On the argument several important questions were raised and discussed, which, in

the view we take of the case, need not be considered. As respects the goods placed in the cellar, we see no room for controversy; and did not, indeed, understand the claim made on this account to be seriously pressed. Leasing the cellar and removing the goods thereto, constituted a sufficient delivery to satisfy the requirements of the law. That the transaction was free from taint of actual fraud is not doubted. Indeed, it is not suggested that such taint attaches to either of the defendants' transactions respecting any part of the goods in controversy.

The other merchandise covered by the receipts, was, as we have seen, also delivered to the defendants. As, however, this delivery did not take place until after Stokes & Co. had become insolvent (though before proceedings in bankruptcy had been commenced), the plaintiff regards it as a fraud on the bankrupt law. We cannot adopt this view. The title to the property was in the defendants, who could have recovered the possession from Stokes & Co. by law. The surrender of the possession was not, therefore, a violation either of the terms or the spirit of the bankrupt act. It did not deprive the creditors of anything which they were entitled to receive. It is unimportant that the surrender could not have been made after seizure on execution. No such question is raised. The effect of the proceedings in bankruptcy alone, is before us for consideration. The case in this aspect cannot be distinguished in principle from Sawyer v. Turpin, 91 U. S. 114, where the defendant (sued by the assignee) had taken a bill of sale from the bankrupt without acquiring possession of the property purchased, and, subsequent to the insolvency, exchanged it for a chattel mortgage—provided for by a statute of the state. The court held that the sale vested the title to the property in the purchaser, as against the bankrupt, that the creditors could not take advantage of the non-delivery, except by execution or attachment, and that the mortgage given in exchange for the bill of sale was therefore valid. In the opinion, Strong, J., says, "The conveyance was by a bill of sale, absolute in terms; * * * but it was understood by the parties to be a security for an existing debt. * * * Having been executed more than four months before the petition in bankruptcy was filed, there is nothing to show that it was invalid. * * * True, no possession was taken under it by the vendee, but for neither of these reasons was it less operative between the parties. It might not have been a protection against attaching creditors, if there had been any. It was in the power of Mr. Turpin, the purchaser, to take possession at any time before other rights against it accrued." The statute which authorized the chattel mortgage referred to in this case in no wise affected the question—which turned upon, and was disposed of according to, general principles governing the sale and transfer of personal prop-

---

[3] [From 9 Reporter, 572.]

erty. The case of Casey v. Cavaroc, 96 U. S. 467, is readily distinguished from Sawyer v. Turpin, and the case before us. The defendant there had but an agreement to pledge the property involved. The transaction amounted to nothing more. And inasmuch as the statute of Louisiana requires a transfer of possession to vest an interest in property pledged, the defendant necessarily failed in his contest 'with the assignee. While the opinion of the court recognizes this distinction, as is apparent on page 490, it may be conceded that general terms are employed which are not inconsistent with the plaintiff's interpretation of the case. They must be read, however, in connection with what precedes and follows them, and as applicable to the facts involved. , It is worthy of remark that in this case three of the justices dissented—holding the defendant's title to be good, as the circuit court had done. We regard it as unimportant that other goods, to some extent, were substituted for those named in the German Smith receipt. At the time this was done the power of Stokes & Co. over their property was not liable to question. Having represented the goods (which the defendants afterward got) to be those specified in the receipt, and the defendants having acted upon this representation, Stokes & Co. could not assert the contrary. The transaction effected a transfer of the property, at a time when no one could object.

As respects the merchandise transferred to the defendants after they became insolvent, to meet the demand which arose out of their previous abstraction of the defendant's property, we agree with the plaintiff. This transfer (though honestly intended) was a violation of the bankrupt laws. We cannot regard the property as having passed to the defendants when the abstraction occurred. It did not. Stokes & Co. continued to own it until after their insolvency. It was then too late to apply it to the defendant's claims. It is unimportant that the claim does not arise upon contract. The defendant's rights against the bankrupt's property were not superior to those of the other creditors; and the transfer made was a preference within the terms as well as the spirit of the statute.