## LUDVIGH v. UMSTADTER et al.

(District Court, S. D. New York. November 9, 1906.)

BANKRUPTCY—SUIT BY TRUSTEE TO RECOVER PROPERTY—EQUITIES.

A bankrupt and another, some time prior to the bankruptcy, bought two lots in common and also entered into a verbal partnership to conduct a business as building contractors. The business was continued for a short time only, and was unsuccessful, resulting in debts to an unknown amount, which were not paid. During and after the partnership the parties built two houses of equal value on the common lots, one of which with half the ground was subsequently deeded to the wife of the bankrupt and the other to defendant, who was the wife of the other partner. The houses were not built in partnership, but an unknown portion of the money used therein belonged to the partnership and an unknown portion was furnished by each partner. No settlement of the partnership business was ever had, and there were no books or records from which such settlement could be made. Held, that the cross-deeds, whether valid as conveyances or not, operated as a fair partition of the property, and that the bankrupt's trustee had no equitable claim against the portion conveyed to defendant which entitled him to have the conveyance to her set aside, whatever might be the rights of partnership creditors.

In Equity. Suit by a trustee in bankruptcy.

Morris J. Hirsch and Mr. Grossman, for complainant.

Thomas A. McKennell and Mr. Zimmerman, for defendants Baumann.

HOUGH, District Judge. Before the month of April, 1904, the defendant Abraham Baumann and the bankrupt, Umstadter, purchased three lots of land in Yonkers. They contributed equally toward the purchase and took title as tenants in common. Some time in the spring of 1904 the same two men entered into a partnership for the purpose of erecting, on contract, houses in the neighborhood of the land they had bought. They had no partnership articles, and the testimony regarding their arrangements leaves nothing clear except that they were each to draw from the firm a weekly stipend, which they called "wages," and were to share equally the profits and losses of the enterprise. They had no capital, and practically the only moneys handled by the firm during its brief existence were borrowed from friends or relations, or derived from payments on account of the few contracts obtained. While the firm was in existence, the partners began the erection of two houses upon the land held in common. This building operation was not a partnership enterprise. The houses, when completed, were intended, respectively, as the houses of Baumann, who was already married, and of Umstadter, who was intending marriage. The money wherewith to build the family houses was in part derived from mortgage covering the land held in common, and

in part from the personal contributions of Baumann and Umstadter, while the origin of the balance of the moneys necessary for the erection of these houses has given rise to the present litigation. On July 30, 1904, the firm of Baumann & Umstadter was dissolved.

I find, on very conflicting testimony, that there was not then or at any other time a settlement of the firm affairs, and that on dissolution it was impossible, owing to absence of proper books and records, to know where the firm stood. By the dissolution agreement Umstadter was to finish the outstanding firm contracts. This he proceeded to do, and with such unsuccess that I must find that there were no firm profits; that the amount of loss cannot be ascertained; that for those losses Baumann and Umstadter are equally liable; and that, if an accounting were had between them (which has never taken place), there is no evidence here produced showing which one would be indebted to the other. The family houses were finished in August, 1904; but the materials entering into their construction were not then all paid for, and, indeed, some of the bills have never been paid. From the evidence of Umstadter and Mrs. Baumann and the bills for materials produced at the trial, I find that all moneys actually expended upon these family houses (over and above the proceeds of mortgages on the land, and the small, and approximately equal, private contributions of Baumann and wife on the one hand, and Umstadter, by borrowing from his father,—on the other) were the moneys of the firm of Baumann & Umstadter. Such moneys were the proceeds of loans made to the firm (e. g., by Umstadter's mother), or were appropriations to the use of the family houses of partial payments on firm contracts. Thus, in effect, inasmuch as the affairs of Baumann & Umstadter terminated in loss to an unascertainable extent, some or all of the moneys put into the family houses should have been used in paying firm debts; while for all the unpaid bills on those houses Baumann and Umstadter were at the time of their completion jointly liable, because such bills had been incurred in the firm name. The evidence is so vague and unreliable that I cannot find accurately the amount of firm money put into these houses, nor do I think it material to make the attempt. Each partner in the firm profitted equally by the operation; each remained equally liable for the consequences of their acts.

After the firm's dissolution Umstadter not only unsuccessfully completed the firm contracts, but embarked upon other enterprises in his own name which resulted in loss. On October 13, 1904, he was hopelessly insolvent, and on that day he and Baumann carried out their original intent in purchasing the joint land and building the family houses, but with one modification. By an arrangement of deeds made and delivered on that day they conveyed (or attempted to convey) half the land and one house to the defendant Dina E. Baumann, the wife of Abraham Baumann, and the other half of the land and the other house to Frances J. Umstadter, the wife of the bankrupt Umstadter. The conveyances to the respective wives were evidently afterthoughts, as is shown by erasures in the deeds, and the deeds themselves are not appropriate as transfers to the wives, and are appropriate to the partition between the partners originally intended. In

result Mrs. Baumann got some interest in a lot of land from an insolvent grantor, who a few days later became a bankrupt, and that bankrupt's trustee brings this suit to set aside the conveyance to Mrs. Baumann, which for the purposes of this litigation may be regarded as vesting in her a fee to a parcel of land of the same value as that which was retained by the Umstadters. Umstadter was proceeded against in bankruptcy by individual petition; and neither Baumann nor the firm of Baumann & Umstadter have been adjudicated or attacked in bankruptcy.

It seems to me that the true legal view to take of these tangled proceedings by ignorant persons is to regard the transaction of October 13th as a partition between the partners, with a cotemporaneous transfer of each partner's interest to his wife. Umstadter's individual creditors (through their trustee) have successfully attacked the conveyance to Mrs. Umstadter. The creditors of Baumann & Umstadter might perhaps successfully attack either or both conveyances, but this case rests upon the asserted right of a trustee, who represents only the individual creditors of Umstadter, to attack the conveyance to Mrs. Baumann. To the extent that both partners put their individual money into the land and houses, or jointly borrowed on the security of the jointly owned land, the transaction is unassailable. It amounts to no more than a partition, and, there being no difference in value between the Umstadter ownership of an undivided half of a tract of land and two houses and a separate ownership of half the land and one house, the transaction is lawful and Umstadter's creditors unharmed. There was in reality an exchange of equal interests, or a change in form, but not of substance. Sawyer v. Turpin, 91 U. S. 114, 23 L. Ed. 235. I think it is true that the firm of Baumann & Umstadter had some equitable interest in the family houses on October 13, 1904. The firm's money had to a certain extent gone into them, though no more had gone into the house destined for Baumann than into the other intended for Umstadter. But such interest is an asset not primarily for the creditors of Umstadter individually, but for the creditors of the firm, and I fail to see upon what principle Umstadter's trustee can follow it. Neither Baumann nor his wife was on October 13, 1904, a creditor of Umstadter, and therefore there could be no preference under section 60 of the bankruptcy act of July 1, 1898 (30 Stat. 562, c. 571 [U. S. Comp. St. 1901, p. 3446]). The creditors of Umstadter were not hindered, delayed, or defrauded by the transfer, because they could have no right to attack the only assailable portion of the transaction, viz., a possible equitable interest of the creditors of Baumann and Umstadter in the Baumann half of the tract, until such partnership creditors were satisfied (which has not been done), and therefore neither section 67 nor section 70 of the act applies.

Further, whatever of the property conveyed to Mrs. Baumann on October 13, 1904, may be regarded in equity as an asset for the payment of debts is an asset for the payment of partnership debts, and is in equity partnership property, and under the circumstances of this case and the express terms of section 5h of the act shall "not be administered in bankruptcy" by the trustee of a single partner.

148 F.—21

It follows from these considerations that Mrs. Baumann should have judgment dismissing the complaint as to her. She is awarded against the trustee in bankruptcy costs of one docket fee and the disbursements of this trial to be taxed by the clerk. It follows, also, that the proceedings against Mrs. Baumann to recover for the use and occupation of the house which is the subject of this litigation should be vacated. Let the order or decree be settled on four days' notice.