## In re BURNHAM.

(District Court, W. D. New York. November 15, 1905.)

No. 2,127.

1. BANKRUPTCY—VALIDITY OF LIENS—UNRECORDED CHATTEL MORTGAGE.

A trustee in bankruptcy representing general creditors only, none of whom were at the time of the bankruptcy armed with legal process authorizing a seizure of the bankrupt's property, cannot take advantage of the failure of the holder of a chattel mortgage to strictly comply with the New York statute requiring statements in renewal to be filed before the expiration of each year.

2. CHATTEL MORTGAGES—AFTER-ACQUIRED MERCHANDISE—LAW OF NEW YORK.

Under the law of New York a provision of a chattel mortgage on a stock of merchandise permitting the mortgagor to sell the mortgaged goods in the usual course of business, the proceeds to be used only in paying the expenses of the business, in replacing articles sold, and in payment of the mortgage debt, does not render the mortgage invalid as to such after-acquired goods, where it does not appear that it was made in bad faith and for the sole benefit of the mortgagor.

In Bankruptcy. On review of decision of referee.

Owen Cassidy (Olin T. Nye, of counsel), for trustee.

Thayer, Tuttle & White (Simon Fleischmann, of counsel), for claimant.

HAZEL, District Judge. This is a review of the decision of Referee Moss, holding invalid claimant's chattel mortgage as against the trustee in bankruptcy and the general creditors of the bankrupt whose claims have been allowed. Two important propositions relating to the alleged invalidity of the mortgage were considered by the referee— the first being that statements in renewal of the mortgage were not filed within the time required by the local statute of the state, and therefore there was an extinguishment of the lien; and, second, that the mortgage was inoperative as to after-acquired merchandise in trade, and accordingly was delivered to the claimant in fraud of creditors. The settled constructions placed upon the statute of the state of New York by the court of last resort of that state are determinative of both propositions. The question whether an unfiled chattel mortgage, unaccompanied by change of possession of the property mortgaged, is void as against judgment creditors and as against simple contract creditors, has often been discussed. And there seems to be an uncertainty as to whether there is an absence of uniformity of decision. The referee analyzes in his opinion the various cases relating to sales and mortgages of personal property, and has made painstaking comparisons, but without succeeding, as I think, in reconciling such cases with the principle of law upon which they are based. It is not my intention to examine herein prior adjudications of the courts of the state, as the Circuit Court of Appeals for this circuit, in Re New York Economical Printing Co., 110 Fed. 514, 49 C. C. A. 133, has fully interpreted the chattel mortgage statute of New York, in a case that was thoroughly litigated and presented and fully discussed in the opinion of the court.

That case was not taken to the Supreme Court, and hence the conclusion reached that a creditor cannot take advantage of the noncompliance with the statute requiring that a statement descriptive of the mortgage shall be filed within 30 days preceding the expiration of each year after such filing, unless he is clothed with legal process under which a seizure may be made, must be considered as that of the tribunal of final jurisdiction. It seems to me that such decision is controlling, so long as it remains unexamined by the Supreme Court or unchanged by the court rendering it. Some indefiniteness of expression in the earlier decisions of the state court renders it difficult to harmonize the interpretations of the local statute; but, as the question of filing renewal statements likewise involves the right of a trustee in bankruptcy, an auxiliary of the national bankruptcy system, to the property of the bankrupt, the solemn adjudication of the Circuit Court of Appeals construing said state enactment must be accepted by the inferior courts of the same circuit as authoritative declarations of the law.

The referee thought the conclusions reached in the Economical Printing Co. Case were subject to critical discussion, and should be overruled, on account of claimed later modifications of prior interpretations of the statute by the courts of the state (Brunnemer v. Cook & Bernheimer Co., 180 N. Y. 188, 73 N. E. 19; Russell v. St. Mart, 180 N. Y. 355, 73 N. E. 31), and on account of the opposite conclusion reached in Re Ducker, 13 Am. Bankr. Rep. 760, 134 Fed. 43. In the latter case the Court of Appeals for the Sixth Circuit construed a similar statute of the state of Kentucky; but it is, perhaps, sufficient to say that the question involved in that case had never been decided by the court of last resort of that state, and therefore the Circuit Court of Appeals did not feel bound to accept any construction of the statute by state tribunals. The later decisions by the Court of Appeals of the state of New York do not, in my judgment, disapprove or modify the earlier cases followed in the Economical Printing Co. Case, wherein it was decisively held, Judge Wallace writing for the court, that a trustee in bankruptcy cannot take advantage of the omission to strictly conform to the provisions of the statute under consideration. The court says:

"It has always been held by the courts of New York that only such creditors can take advantage of it as are armed with some legal process authorizing the seizure of the mortgaged property, and are thereby in a position to enforce a lien upon it (Jones v. Graham,. 77 N. Y. 628; Button v. Rathbone, 126 N. Y. 187, 27 N. E. 266; Stephens v. Britannia Co., 160 N. Y. 178, 54 N. E. 781, 73 Am. St. Rep. 678), and that the mortgage is good as to creditors at large, as well as between the parties."

The court held that:

"Under the present act, however, by section 67, Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], 'claims which for want of record or for some other reasons would not have been valid liens as against the claims of the creditors of the bankrupt' are not liens against his estate (subdivision 'a'), and by subdivision 'b' whenever a creditor is 'prevented from enforcing his rights against a lien created or attempted to be created by his debtor, who afterwards becomes a bankrupt,' the trustee of the estate is subrogated to and may enforce the rights of such creditor for the benefit of the estate. * * * When the mortgagor was adjudicated a bankrupt, there was, so far as appears, but one judgment creditor. *Whether any other creditor*

*could have eventually entitled himself to the benefit of the statute was a matter of mere conjecture.* It would have depended, not only upon his own vigilance in pursuing his legal rights, *but also upon the volition of the mortgagor. The mortgagor could have made a general assignment of its property for the benefit of its creditors, or surrendered possession of the mortgaged property to the mortgagee, and in either event the right of all creditors to impeach the lien would have been extinguished.*" (Italics mine.)

The pith of the decision is contained in the remarks of the court wherein it is stated that general creditors must be armed with some legal process before they can assert the invalidity of the mortgage lien, and that the provisions of the bankrupt act do not vest the trustee with any better right or title to the estate of the bankrupt than belongs to the bankrupt or to the creditors when the trustee's title accrues.

It is also stated in the opinion of the Circuit Court of Appeals that:

"The present act, like all preceding bankrupt acts, contemplates that a lien good at that time as against the debtor, and as against all of his creditors, shall remain undisturbed. If it is one which has been obtained in contravention of some provision of the act which is fraudulent as to creditors, or invalid as to creditors for want of record, it is invalid as to the trustee."

The language last quoted is distinctly approved by the Supreme Court of the United States in Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986. And in Skilton v. Codington, 86 App. Div. 166, 83 N. Y. Supp. 351, it was considered as thoroughly settled in this state that, in order to attack the validity of a mortgage claimed to be void for omitting to comply with the provisions requiring its filing, a creditor must be a judgment creditor or must have obtained a specific lien against the property of a bankrupt. But it is strongly argued that the filing of a petition in bankruptcy is in legal effect an attachment of the assets of the bankrupt for the benefit of the creditors, and that following the doctrine of Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, it is in the nature of a seizure of property in strict analogy to a levy on execution. It seems to me, however, that the effect of the holding in this circuit in the Economical Printing Co. Case was that the seizure under legal process did not contemplate a seizure of property such as that mentioned in the Nugent Case (an involuntary proceedings in bankruptcy), but simply referred to independent suits to recover a debt followed by judgment or seizure in the ordinary course of the litigation, and that the provisions of the bankrupt act are not broad enough to include any other method of seizing property. As was said in Skilton v. Codington, supra:

"In the absence of express provision to the contrary, we think it must be assumed that it was the intention to effect such transfer of the bankrupt's property, subject to the conditions and rights of the various creditors, as they existed at the time when the bankruptcy proceedings became effective, and that it was not the intention to invest the trustee in behalf of one class of creditors with greater rights than they then possessed against any other class of creditors."

In the views of the Circuit Court of Appeals for this circuit and the Appellate Division, Fourth Department, this court, without entering into any independent discussion of the question, concurs; and hence the objection that the chattel mortgage in controversy is void as against

the trustee and creditors at large, on the ground that the mortgagee omitted to seasonably file statements in renewal of the mortgage, is overruled.

The next proposition is that the mortgage was vitiated because it covered articles of merchandise in the store of the bankrupt, which replaced articles previously sold by the mortgagor for his own benefit. The referee found that the bankrupt was not the agent of the mortgagee, and that under the agreement he had authority to sell the incumbered property for his own benefit. To the latter conclusion I must withhold my assent. It must be admitted that a chattel mortgage is invalid whenever its existence is purely for the benefit of the mortgagor who retains the possession and right of disposition of the property mortgaged. Robinson v. Elliott, 22 Wall. 513, 22 L. Ed. 758; Bank of Leavenworth v. Hunt, 11 Wall. 391, 20 L. Ed. 190, and Means v. Dowd, 128 U. S. 273, 282, 9 Sup. Ct. 65, 32 L. Ed. 429. But, where the decisions of the local courts construing the statute allow a retention and possession of the property for the express purpose of applying the proceeds of the sale towards payment of the mortgage debt, a different question is presented. The principle is recognized and well established that a covenant in a chattel mortgage enabling a mortgagor who retains possession of the property to sell the same at retail, and use the funds to replenish the stock sold, is not for the benefit of the mortgagor; provided the transaction is bona fide, and the mortgagor bound to apply the proceeds of sales towards the payment of the debt. Such an instrument is not void as to creditors. Brackett v. Harvey, 91 N. Y. 214. The record does not show that Burnham with the knowledge of the mortgagee diverted any part of the proceeds or used the same for any other purpose than paying the expenses of the business and replenishing the stock in trade, which was expressly permitted by the mortgage agreement. The mortgage was not given as a shield to the mortgagor in his business transactions or for his special accommodation. It is true some of the avails of the business were applied to his individual use. He testified that his support and that of his family was obtained from the income of the business. Cases abound which hold, in effect, that an agreement that the mortgagor might remain in possession of the goods mortgaged, sell the stock in trade, and use the proceeds for his own benefit, is in fraud of creditors. Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951, 21 Am. St. Rep. 678; Potts v. Hart, 99 N. Y. 168, 1 N. E. 605; Southard v. Benner, 72 N. Y. 424; Skilton v. Codington, 86 App. Div. 166, 83 N. Y. Supp. 351.

The evidence shows that a new mortgage was not given at the end of the year following the execution of the mortgage in question, although it was agreed that one should be delivered. Such mortgage, however, on March 3, 1903, within the statutory period, was regularly renewed by filing a statement descriptive thereof and the time and place of its filing. Subsequent statements required by the statute were not seasonably filed. They were filed on April 2, 1904, and April 8, 1905, respectively, but not within the 30 days limited by the statute. The testimony of Dr. Bennett, aside from the express condition of the mortgage that the proceeds of sale should be paid him on account of the

140 F.—59

debt, indicates a positive and direct arrangement to so apply the proceeds over and above the legitimate expense of carrying on the business. The presumption is not warranted that the provision of the mortgage relating to payment of the debt by applying the proceeds was modified by parol, nor that there was a diversion of such proceeds by the mortgagor for his benefit with the knowledge of the claimant. At the time the mortgage was given the bankrupt was unmarried. The proofs do not show that the claimant knew that the bankrupt retained a portion of the proceeds of sales for his support and that of his family, and the bankrupt does not claim that Dr. Bennett had such knowledge. That he had such knowledge is not to be presumed from the facts presented. The mortgage, in my opinion, was given to secure an honest debt, and, if tainted with fraud, it must spring from an understanding outside of the terms of the mortgage. Such an understanding, however, is not disclosed by the evidence, nor by inferences that may be fairly deduced therefrom. Having carefully considered the evidence, I am unable to reach the conclusion that the transaction was dishonorable or fraudulent and void. The rule needs no citation of authorities that the party alleging fraud must produce stronger proof than that necessary to establish a mere debt or sale. If the facts present double aspects—one consistent with fair and honorable dealing, and the other involving a dishonest purpose—the presumption must favor the former. My conclusion is that the mortgage in question was not void as to the trustee in bankruptcy and general creditors.

From the foregoing it follows that the claim of Dr. Bennett, except as to judgment creditors, should be allowed by the referee, and the questions certified are answered in accordance with these views. So ordered.