In re CUTTING.

(District Court, W. D. New York.  May 7, 1906.)

1,472.

1. CHATTEL MORTGAGES—VALIDITY—NEW YORK STATUTE.
    The failure of a chattel mortgagee to file a copy of the mortgage, together with a statement showing the mortgagee's present interest, within 30 days next preceding the expiration of a year after it was given, as required by the New York statute (Laws 1883, p. 402, c. 279, and amendments), does not render the mortgage invalid as between the parties, nor as against general creditors of the mortgagor.
    [Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Chattel Mortgages, § 152.]

2. BANKRUPTCY—ACTS OF BANKRUPTCY—RENEWAL OF MORTGAGE.
    The giving of a chattel mortgage to secure an antecedent debt is not a preferential transfer which constitutes an act of bankruptcy, where it is given in good faith in renewal of a prior mortgage and covering the same property, and in such case the fact of the mortgagor's insolvency is immaterial; nor does the including of additional property render it preferential, where the mortgagor receives a further present consideration sufficient to warrant the additional security.

3. CHATTEL MORTGAGE—VALIDITY—SALE OF PROPERTY BY MORTGAGOR.
    A chattel mortgage is not rendered void by the mere fact that the mortgagor sold certain of the mortgaged property, where the mortgage contained no provision permitting such sale for his benefit, and it does not appear that it was not made for the benefit of the mortgagee and by his authority.

In Bankruptcy.  On motion to confirm report of special master.

Nelson J. Palmer, for petitioners.
Thayer, Tuttle & White, for objecting creditors.

HAZEL, District Judge.  The report of the special master herein finds that the alleged bankrupt, Benjamin W. Cutting, committed an act of bankruptcy in transferring, while insolvent, certain personal property, by executing and delivering chattel mortgages thereon, with intent to create an unlawful preference under the bankrupt act.  The undisputed facts are as follows:  The opposing creditors, Lazell & Co., at different times, beginning in the year 1899, loaned and advanced money to the bankrupt, accepting as security therefor a chattel mortgage upon specified personal property.  Such chattel mortgage was executed and delivered on April 24, 1901, and on February 8, 1902, another mortgage was given in renewal thereof to secure amounts due and to become due covering the property specified in the former mortgage.  Subsequently, on March 12 and 13, 1903, respectively, the debtor gave to said secured creditors two chattel mortgages to secure the sum of about $3,000, the amount then due, as appears by the testimony of Cutting, which mortgages covered the property theretofore mortgaged to them, and in addition a so-called Hartman machine, not enumerated in the prior incumbrance.  The mortgage liens were duly recorded or filed in the town clerk's office, as required by the statute of the state.  It is claimed, however, that the mortgages of March 12 and 13, 1903, were not continued of force

against the creditors of the mortgagor or subsequent purchasers or mortgagees in good faith, in that chapter 528, p. 460, of the Laws of 1896, which requires that a statement describing the mortgage, and the time and place of its filing, be filed within the 30 days, was not complied with. There exists some contrariety of decisions in relation to the effect of an omission to strictly comply with the provisions of the statute as to whether a mortgage ceased to be valid against a creditor at large of the mortgagor, or if a creditor must be in a situation to seize the mortgaged property pursuant to a lien upon it. This proposition I conceive to be definitely decided in the Matter of New York Economical Printing Co., 110 Fed. 514, 49 C. C. A. 133, where the state court authorities are cited and examined by the Circuit Court of Appeals for this circuit, and which holds that:

"Only such creditors can take advantage of it [the statute] as are armed with some legal process authorizing the seizure of the mortgaged property, and are thereby in a position to enforce a lien upon it."

The cases hold that a trustee in bankrutcy takes the property in the same plight and condition that the bankrupt himself held it, assuming the transaction free from fraud and subject to the existing equities. Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577. And as between the alleged bankrupt and the mortgagees, giving due consideration to the facts of this case, it is thought that the mortgages in question were neither void nor fraudulent. The contesting creditors contend that such mortgages were practically renewals and covered the identical property; that they were not void as against the mortgagees, though given as collateral security for a pre-existing debt owing from the bankrupt, and no statement having been filed in accordance with the state enactment mentioned. The evidence satisfies me that the transaction was not in bad faith, and that no intention existed to defeat the operation of the bankrupt act. Hence, it is immaterial that Cutting was, or that the mortgagees had reason to believe him, insolvent. The bankrupt act does not forbid the giving of other or different security within the four months period to replace security previously given, if such security is a valid one and of equal value as that previously given. The mortgagor might have surrendered the possession of the property of the mortgagees just prior to making the new mortgages. Indeed, the mortgagees could legally have taken possession thereof in payment of their lien, though there had been no compliance with the statute regarding refiling. As said in Sawyer v. Turpin, 91 U. S. 114, 23 L. Ed. 235:

"The mortgage covered the same property. It embraced nothing more. It withdrew nothing from the control of the bankrupt, or from the reach of the bankrupt's creditors, that had not been withdrawn by the bill of sale. Giving the mortgage in lieu of the bill of sale, as was done, was therefore a mere exchange in the form of the security. In no sense can it be regarded as a new preference. The preference, if any, was obtained on the 15th of May, when the bill of sale was given, more than four months before the petition in bankruptcy was filed. It is too well settled to require discussion that an exchange of securities within the four months is not a fraudulent preference within the meaning of the bankrupt law, even when the creditor and the debtor know

that the latter is insolvent, if the security given up is a valid one when the exchange is made, and if it be undoubtedly of equal value with the security substituted for it."

This language, in a case where the facts were only slightly different, is not thought inapplicable here. It was held in Re Shepherd, 6 Am. Bankr. Rep. 725, that where a new chattel mortgage, which was duly recorded, was given within four months of filing the petition, in place of a prior mortgage and for a valuable consideration, the new mortgage operates as a continuance of the prior incumbrance, and, as no lien intervened before the bankruptcy, there was no illegal preference. In Asbury Park Building & Loan Association v. Shepherd, 6 Am. Bankr. Rep. 725, it is stated that:

"The mere exchange of securities within four months is not a preference within the meaning of the bankrupt law; the reasons being that the change takes nothing from the other creditors."

There a new mortgage was substituted for a prior security within four months of the filing of the petition in bankruptcy. The facts of that case are similar to those here presented. See, also, Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816. In this case the same property was included in the mortgages given by Cutting to replace prior ones to secure an indebtedness already existing, and, as already stated, in addition thereto the Hartman machine, which inclusion was warranted by a present consideration of $125, subsequently used by the bankrupt in payment of insurance. True, the referee found that the later mortgage included property not enumerated in the earlier, but a careful comparison of the two instruments indicates otherwise. Various of the items were a little differently described, but the schedule of personal property attached to the mortgage reasonably identifies the articles as practically the same, with the exception of the Hartman machine and the offspring of the stock mentioned in the earlier mortgage.

The finding of the referee in relation to the disposition of sale of certain property, consisting of fodder, logs, baskets, etc., is not thought to be sustained by the evidence. It does not appear that the mortgagor sold any of the property to customers, nor that he diverted or retained the proceeds of any sales for his individual benefit. In the absence of testimony to that effect, the Lazell mortgage cannot be held void; it containing no provision permitting the mortgagor to sell the mortgaged property, nor requiring an accounting of the proceeds. If such facts were shown, perhaps a different question would be presented. Brackett v. Harvey, 91 N. Y. 214; In re Burnham (D. C.) 140 Fed. 926. The implication of such acts on the part of Cutting is not warranted from the mere fact that he was in possession of the property and continued the operation of the mill or factory. As argued by counsel for the opposing creditors, such an implication might be rendered nugatory by proof that a sale or disposition of mortgaged property was not only authorized by the mortgagees, but also that the mortgagor acted as agent in its disposition or sale. The mortgagees were not required to explain the covenant in the mortgage or to give evidence in relation to any presumed sales.

The mortgages to Taylor & Wakeman, claimed to have been unlawful transfers in contravention of the bankrupt act, were also executed and delivered by the bankrupt as substitutes for prior unpaid mortgage liens, and come under the views herein expressed.

The questions touching the jurisdiction of the court and the evidence in relation to the bankrupt's chief occupation as a farmer or tiller of the soil need not be considered. Upon the evidence presented, I am of opinion that the provisions of section 3 of the bankrupt act have not been violated.

The petition for adjudication of Benjamin W. Cutting as a bankrupt is therefore dismissed. So ordered.