### In re ENDLAR.

### In re STROUM.

(Circuit Court of Appeals, First Circuit. December 8, 1911.)

#### No. 935.

1. BANKRUPTCY (§ 440*)—REVIEW OF PROCEEDINGS.

The Circuit Court of Appeals will not refuse to supervise on petition bankruptcy proceedings had in the District Court, though appeal would have been the proper procedure, in the absence of objection by the parties or controlling determination by the Supreme Court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. § 440.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKRUPTCY (§ 188*)—RIGHTS OF CREDITORS—LIENS—WAIVER.

A bankrupt's creditor does not waive lawful security for his claim by merely accepting additional security.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

3. BANKRUPTCY (§ 188*)—PROPERTY—MORTGAGE—LOSS OF SECURITY.

Title to goods is not lost by mixture with other goods where they do not lose their identity, and hence a bankrupt's creditor who was secured by mortgage on a stock of furniture and the incidentals thereof, did not lose his security through allowing the property to be mingled with the bankrupt's general stock.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

4. BANKRUPTCY (§ 188*)—CREDITORS—SURRENDER OF SECURITY.

A bankrupt's creditor does not ordinarily surrender the security of a chattel mortgage by permitting the receiver to take possession of the goods, since the receiver represents all interests.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

5. BANKRUPTCY (§ 188*)—MORTGAGES—VALIDITY.

A renewal chattel mortgage given a bankrupt's creditor may be good so far as the renewal debts were previously validly secured, though the renewal mortgage be otherwise invalid.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

6. BANKRUPTCY (§ 479*)—REVIEW OF PROCEEDINGS—COSTS.

Though a decree in bankruptcy be reversed on review in the Circuit Court of Appeals, no costs should be allowed when the petition for review was delayed nearly six months, and the estate had probably deteriorated through the delay, and where further proceedings are necessary.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 901; Dec. Dig. § 479.*]

Petition by Isaac Endlar to supervise proceedings in the matter of Nathan Stroum, bankrupt. Decree reversing decree of the District Court.

Elisha Greenhood, for petitioner.

J. B. Ferber (C. F. M. Fuller, on the brief), for respondent.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge. [1] This is a petition under the statutes in bankruptcy to supervise the proceedings in the District Court with reference to a controversy which should properly have come up on appeal; but it has never yet been decided with reference to a proceeding which initiates in the bankrupt court, and which should properly come up on appeal, that it may not be brought up on a petition to revise when no objection is made thereto. The petitioner loses nothing except his right to have the facts revised, while the respondent loses nothing except the advantage which may possibly come from a similar revision of the facts. In view of the frequent instances of this character and the lack of any determination to the contrary by the Supreme Court, and any objection by the parties, we do not feel called on to decline jurisdiction.

It is a fact, however, that the parties pro and con have submitted to us many propositions which call for a revision of the facts, some

of which, moreover, are not supported by anything in the record in any view of it; so that, in order that once for all we may strike out all those propositions except so far as they involve suggestions which an appellate court may well receive with reference to giving leave to the court of first instance for subsequent proceedings, we will repeat all parts of the record which we are entitled to consider. They consist of the petition to the District Court, with an indorsement on it by the referee that the same is denied, of the certificate of the referee and of the judgment of the District Court:

"(Filed October 11, 1909, 4:50 p. m.)
"Before Honorable Emery B. Gibbs, Referee.
"In re Nathan Stroum, Bankrupt.

"Respectfully represents Issac Endlar, of Malden, in the county of Middlesex and commonwealth of Massachusetts, that on June 14, 1909, the bankrupt executed and delivered to him a mortgage for $1,200, to secure the payment of his simultaneous promissory note of like amount, a copy of said mortgage being hereto annexed, marked 'A'; that said mortgage was duly recorded in the records of mortgages on personal property, in the clerk's office, of the town of Stoughton, Massachusetts, in book 9, page 4; that the sum of $687 is still due upon said mortgage to your petitioner, upon the principal of said mortgage and for expenses incurred by your petitioner in a proper attempt to foreclose said mortgage and in protecting himself from being deprived of the security afforded by said mortgage; that by leave of court the trustee appointed in said cause has disposed of the said mortgaged property for a sum in excess of the amount due to your petitioner.

"Wherefore your petitioner prays that the amount due to your petitioner be determined, and that a lien in his favor be established upon the proceeds for the amount so determined, and that the said trustee be ordered to pay your petitioner the amount so determined and established.        Isaac Endlar.

"October 1, 1910.
"After hearing the petition is denied.        Emery B. Gibbs, Referee."

"Certificate by Referee to Judge.
"(Filed October 14, 1910, 12 a. m.)

"I, Emery B. Gibbs, one of the referees of said court in bankruptcy, do hereby certify that in the course of the proceedings before me the following question arose, pertinent to the said proceedings:

"Isaac Endlar filed a petition October 11, 1909, asking the court to determine the amount due him under a mortgage in which the consideration was recited at $1,200, said mortgage being dated June 14, 1909. On this petition a hearing was had July 30, 1910.

"Previously, however, there had been several hearings on another petition of said Endlar, filed March 12, 1910. In said last petition Endlar asked the court to determine the amount due him under several mortgages and pledges therein set forth, and that the proceeds of the sale of the property of the bankrupt, in the hands of the trustee, might be applied to pay or satisfy the amount that should be found due Endlar.

"After full hearings of the evidence and arguments of counsel, this petition was denied.

"At the hearing on the petition filed October 11, 1909, it was agreed by counsel that the evidence given at the former hearings might be referred to and used in connection with the present petition, so far as the same was relevant and pertinent.

"From all the evidence before me, and from the records, it appeared that an involuntary petition against the bankrupt was filed June 25, 1909, and on this petition an adjudication was made July 13, 1909.

"It was not claimed by the petitioners that the amount of $1,200 had been advanced by him to the bankrupt on the 14th of June, 1909, the date of

the mortgage for that amount. The petitioner testified that the sum of $400 only was to be paid on that date; that the balance of the $1,200 had been advanced by the petitioner, or loaned by him, to the bankrupt at various times prior to this date; and that for the several loans, making up that amount, security of some sort had been given, either in the nature of a lien or mortgage. The petitioner claimed that the $400 had not passed from the petitioner to the bankrupt, because the matter of insurance was not satisfactorily adjusted. In order to determine what, if any, present consideration there was for the $1,200 mortgage, it became necessary to examine the several prior transactions.

"From the evidence before me, I find that on the 20th of February, 1909, Endlar loaned the bankrupt the sum of $450, and took as security for this loan certain goods, which were placed in his possession, to secure the repayment of this loan of $450; that these goods were separated from the stock in trade of the bankrupt, placed in a room in another building by themselves, and that the petitioner kept the possession of these goods until they were brought back to the general store of the bankrupt, and that he (Endlar) had the keys to the bankrupt's store, and that he retained possession of the goods in question until after the appointment of the receiver by the judge of the District Court, when the property was turned over to the receiver by Endlar. There was no reservation of rights, or claim of right, to hold as security for the above loan of $450.

"Much of the testimony given was unsatisfactory, unreliable, and conflicting. On all the evidence I found that the security taken by the petitioner, if any, was waived and lost by the petitioner when he allowed these goods to be mingled with the stock in trade of the bankrupt, and later, when he surrendered, without protest or reservation of his rights, the possession of these same goods to the receiver, and I therefore find that the petitioner has no lien upon these goods of the bankrupt, or the proceeds from the sale of said goods on account of this alleged loan of $450, that can be enforced against the trustee in bankruptcy.

"The petitioner also claimed that on the 28th of May, 1909, he loaned the bankrupt $219, taking a mortgage for this amount, and that said mortgage was duly recorded.

"I find that the present consideration for the mortgage of May 28th was $110; that the $100 claimed by the petitioner as a prior loan, for which he held an unrecorded mortgage, was a prior debt, and this mortgage cannot, as against the trustee or creditors, be held good for that sum.

"The further sum of $9 was claimed by the petitioner as interest and expense for making the loan. While this may be excessive, it is not so excessive as to warrant setting it aside.

"I therefore find that the mortgage of May 28, 1909, was good for the sum of $119, and for that amount only.

"On the 14th of June, 1909, the mortgage upon which this petition is based was given by the bankrupt to the petitioner for the sum of $1,200 for the purpose, as the petitioner alleges, of securing him for all prior indebtedness of the bankrupt and an additional loan to make the amount $1,200. There was no present consideration for this mortgage of $1,200, and I therefore find that the petitioner has no standing or claim under said mortgage, except for the sum of $119 as above.

"On the 23d of June, 1900, the bankrupt made an assignment of his property, and the assignee took possession. On the 24th of June, 1909, the petitioner, Endlar, demanded and received from the assignee the sum of $160, claiming that he had a right to the possession of the property under his mortgage and to the proceeds of the sale of any of the goods described in said mortgage.

"All of the foregoing mortgages were given within four months of the adjudication, and so are preferences, except so far as they were given for present consideration.

"I therefore find that the $160 paid to the petitioner, Endlar, must be applied first to extinguish the $119, this being the only sum due under this mortgage, and that the excess of $41 above the amount then due the petitioner was a preference given to the petitioner and should be treated as such.

"In view of the facts above found and set forth, I ruled that the petition should be dismissed, and refused to allow any expense incurred by the petitioner. Endlar, in trying to foreclose upon the property described in the mortgage dated June 14, 1909.

"Upon all the evidence I found that the transactions and dealings between the bankrupt and the petitioner were not in good faith, and were not made in the usual and regular course of business, but that they were clearly intended by the parties as a protection of their personal interests against the bankrupt's general creditors and a fraud upon the bankrupt's general creditors.

"And the said question is certified to the judge for his opinion thereon.

"Dated at Boston this 11th day of October, A. D. 1910.

"Emery B. Gibbs,
"Referee in Bankruptcy."

The order entered by the learned judge of the District Court on the foregoing certificate of the referee was as follows:

"At Boston, in said district, on the 28th day of November, A. D. 1910, upon the question certified to the court by the referee in said matter, on the 14th day of October, A. D. 1910.

"Now, therefore, after hearing arguments of Elisha Greenhood, Esquire, counsel for Isaac Endlar, mortgagee, and J. B. Ferber, Esquire, counsel for the trustee, and, after due consideration of the same,

"It is hereby ordered and decreed that the order of the referee dismissing the petition of the mortgagee be, and it hereby is, affirmed."

It is to be noted that the petition which initiated these proceedings was to establish a mortgage for $1,200, made only a few days before the petition in bankruptcy was filed. It does not assert the entire amount for which the mortgage was recoverable, but claims only a portion thereof, namely, $687, being what is represented by the prior transactions stated in the certificate of the referee. These were the advance of $450, made on February 29, 1909, one of $100 at a date not named, and secured by an unrecorded mortgage, and one of $110 made on May 28, 1909, and secured by a mortgage of that date. As shown by the referee's certificate, the facts found by him establish clearly the securing of the $450 by a valid pledge, always kept valid until the surrender by Endlar to the receiver, and the mortgage loans of $100 and $110. The fact that the mortgage securing the $100 was not recorded was of no consequence prior to the present statute in bankruptcy, as it was not shown that the mortgagor was bankrupt when the mortgage was given, and that it was intended and given as a preference. The $110, according to the referee's certificate, was a present advance, and therefore properly secured by the mortgage of May 28th, which also created a valid security for the other sum of $100, on the principles we will hereinafter state with reference to the $1,200 mortgage. All these were payable, except so far as they had been paid in the manner pointed out by the certificate, when the mortgage of $1,200 was given; and they were at the time that mortgage was given lawfully secured as against proceedings in bankruptcy. Therefore, the questions are whether, through the prior proceedings stated by the referee, the mortgagee and pledgee lost liens thereto valid in law.

One question arises from the fact that the present petitioner filed an intervening petition on March 12, 1910, which was denied by the referee without any appeal therefrom. If the record had shown that

it had been denied on the merits, and no appeal taken therefrom, this might be the end of the petitioner's rights; but the record does not show why it was denied. It may have been because the referee was of the opinion that the security therefor had been carried forward and absorbed in the mortgage securing nominally $1,200, which would have left the substantial rights of the petitioner unaffected.

[2] The substance of the decision of the referee was the same as is now specially relied on by the respondent, namely: First, that by taking the $1,200 mortgage the prior security was waived in law; and, second, that the goods were allowed to be mingled with the general stock in trade of the bankrupt; and, third, that a surrender of the pledged and mortgaged goods to the receiver, without protest or reservation, was an effectual abandonment of whatever security the petitioner had.

In discussing these three propositions, it is to be borne in mind that nothing done by the petitioner in these three particulars operated as an estoppel, because no new rights of any innocent third party intervened, which is ordinarily the basis of an estoppel. Neither was it effectual as a waiver, because, while various conditions collateral to or inherent in the original transaction, and various defenses, even of a substantial character, are easily waived, no substantial rights are ordinarily waived merely because the holder of those rights accepted additional rights in aid thereof.

[3] There was here no such mixture of goods as the law regards as effectuating a loss of title. The goods here in question were a stock of furniture and the incidentals thereof, and the loss of title by mixture has no relation to property which does not lose its identity by that mixture.

[4] As to the receivership, it is true that, under the decisions of the courts, the petitioner, if in possession of property claimed in his own right, might not have been subject to the orders of the court in bankruptcy through a receivership or otherwise; but this did not require him to litigate with the receiver, to the disadvantage of both parties through delay and expense. Whether he surrendered or not, he was entitled to the protection of the rule that a receiver represents all interests, and prejudices none, as was explained by us in Commonwealth Company v. North American Company, 135 Fed. 984, 68 C. C. A. 418, decided on February 28, 1905; and especially in the references made by us at pages 989 and 990 of 135 Fed., page 418 of 68 C. C. A., to the expressions of Mr. Justice Swayne in Davis v. Gray, 16 Wall. 203, 217, 218, 21 L. Ed. 447, expressions which clearly represent the law, involving equitable principles of the broadest and most beneficial character.

[5] If the mortgage of $1,200 had absolutely failed, then it might be that, in view of the fact that the petition of March 10, 1909, had been denied, as we have said, the original securities were lost; but on this record the mortgage of $1,200 was at least good to the extent that the preceding securities which it represented were good. The extent to which this equitable rule may be carried was shown by us in Hutchinson v. Otis, decided by us on May 22, 1902, 115 Fed.

937, 53 C. C. A. 419, and affirmed by the Supreme Court in 190 U. S. 552, 23 Sup. Ct. 778, 47 L. Ed. 1179.

The only doubt arising in this connection comes from the closing words found in the referee's certificate, where he described the $1,200 mortgage "as a fraud upon the bankrupt's general creditors." This is inconsistent with what he before stated, where he first said that, for the reasons we have already referred to, he found the petitioner had no lien for the loan of $450, and again that he "therefore" found that the petitioner had no standing except for the sum of $110. Moreover, fraud is not properly described by a mere general expression such as we find here, but the elements of the fraud, to be effectual in law, should be pointed out, so that the court may see for itself whether they conform to the requirements of the law; and, in view of the general trend of the body of this certificate, it cannot be that these words which we have quoted are effectual. It is possible that the learned judge of the District Court perceived some surrounding circumstances which induced him to give more weight to the words which we have quoted than we are entitled to give them on the record before us. Therefore, although, of course, if the mortgage of $1,200 had been artfully swollen as to the apparent amount of indebtedness, or had been devised in any other way purposely to operate as a fraud on creditors, it might have been invalid for all purposes both in whole and in parts, we must, nevertheless, find that on the face of the referee's certificate it is good for the amounts previously secured, as we have stated.

[6] The result is that we must set aside the decree of the District Court. But it appears that the petition for revision was delayed until two days less than six months from the entry of the decree at which it is aimed; and it is suggested that the condition of the estate has meanwhile substantially deteriorated, and that there may not remain sufficient assets to cover the petitioner's claim, and, indeed, that there were never sufficient assets therefor. Therefore, without undertaking to consider or even to suggest what the law may be with reference to the altered circumstances, if they are altered, we reserve full right to the District Court to take any proceedings which the circumstances may require with reference to working out the effectual security of the petitioner according to the rules of law and equity which should be justly applied thereto.

Under the circumstances of the delay in this case, and the further proceedings and costs ensuing thereon, no costs should be allowed to either party in this court or in the District Court.

Let there be a decree in accordance with our opinion passed down the 8th day of December, 1911, reversing the decree of the District Court, without costs for either party, and reserving to the District Court power to proceed in conformity with the opinion.