trial court "lacked jurisdiction" because the record fails to disclose affirmatively the commission of a crime within the territorial jurisdiction of the trial court. The case was then carefully considered after a full hearing and reargument. The opinion Vigoretti v. Hill, Warden (D.C.) 16 F. Supp. 41, set forth the facts in full and held that the evidence taken at the trial is no part of the record to be considered in a habeas corpus proceeding.

In the present case, the petitioner concedes jurisdiction to enter upon the trial, but contends that the trial court "lost jurisdiction." To determine this the court must examine the evidence taken at the trial. Therefore the legal question is the same as in the former case, whether this court can examine the evidence taken at the trial.

 Venue is an element to be established by evidence at the trial of a case and there is properly no question of "loss of jurisdiction." On appeal the question is whether the proof sustained the indictment.' U. S. v. Clein (D.C.) 189 F. 201; Wallace v. U. S. (C.C.A.) 243 F. 300, 305. It has been held that the objection that venue was not proved cannot be raised for the first time in the appellate court. Tuckerman v. U. S. (C.C.A.) 291 F. 958, 967. Certainly then a question of proof which is the subject of an appeal cannot be raised for the first time in a collateral attack by habeas corpus.

The question of the locus of a crime involves considerations of the evidence. It is a question for determination by the trial court and jury and cannot be reviewed on habeas corpus. In Walsh v. Archer (C.C.A.) 73 F.(2d) 197, at page 199, the court said: "Whether the location of the alleged crime was upon the high seas and exclusively within the jurisdiction of the United States required consideration of many facts and seriously controverted questions of law, including the alleged error involving the jurisdiction of the court. * * * This error, if error it was, did not render the judgment void, but was, at the most, one which could have been corrected on appeal. This is likewise true of any other alleged error. The court had jurisdiction of the petitioner, and, by virtue of the statute, of the crime of murder committed on the high seas, as charged in the indictment. Whether the locus of the crime charged was within the jurisdic-

tion of the trial court was a matter for the determination of the court and the jury. We have no authority to review that determination on habeas corpus." On habeas corpus the conclusive presumption is that the proof sustained the charge. Norton v. Zerbst (C.C.A.) 83 F.(2d) 677, 678.

The present writ of habeas corpus must be discharged for the reasons set forth in Vigoretti v. Hill (D.C.) 16 F.Supp. 41, and the additional reasons set forth above.

And now the petition for a writ of habeas corpus is dismissed and the writ of habeas corpus is discharged.

**In re HUNT et al.**

**No. 9120.**

District Court, M. D. Pennsylvania.

March 1, 1937.

A. N. Crandall, of Coudersport, Pa., for petitioner.

W. F. DuBois, of Coudersport, Pa., for William A. Eimer, Creditor.

JOHNSON, District Judge.

This is a petition to review an order of the referee in bankruptcy holding invalid two chattel mortgages given by the bankrupts and holding a mortgage claim to be an unsecured debt.

On May 25, 1934, the Coudersport Production Credit Association loaned $900 to the bankrupts and the latter executed to the former a chattel mortgage in the same amount secured by all the bankrupts' livestock and farm equipment. This chattel mortgage was duly recorded on June 6 1934. After paying $200 upon the mortgage, the bankrupts desired to make an additional loan of $150 and by agreement of the parties the mortgagee loaned the bankrupts the additional $150, whereupon the bankrupts on March 27, 1935, executed a new chattel mortgage for $850 to cover the $700 remaining due on the first mortgage and the additional loan of $150. The $850 mortgage, recorded on April 2, 1935, was secured by the identical livestock and farm equipment as mentioned above. On June 28, 1935, within four months from the time the $850 mortgage was made, the bankrupts filed their voluntary petition in bankruptcy.

William A. Eimer, administrator, and one of the bankrupts' creditors, petitioned the referee to declare the mortgages void on the ground that the second mortgage, being a new contract, extinguished the first mortgage, and that the second mortgage was void because given within four months of the filing of the petition in bankruptcy. The referee so held and the Coudersport Credit Association petitioned for review.

From the evidence the referee found that the parties intended the $850 mortgage to take the place of the former mortgage of $900 which was to be there-upon satisfied and extinguished and found that the $900 mortgage was in fact extinguished. The evidence clearly supports this finding. The referee, however, erred in concluding that the mortgage for $850 was void because made within four months of the filing of the petition in bankruptcy.

In the case of In re Cutting (D.C.) 145 F. 388, the facts were almost identical with the present case. In that case, Cutting, the bankrupt, executed a chattel mortgage upon enumerated livestock and other personal property. This chattel mortgage was replaced, within four months of the filing of a bankruptcy petition by Cutting, by a new chattel mortgage to secure the balance remaining on the prior mortgage and an additional present loan of $125. The property covered by the later mortgage was identical with the property enumerated in the earlier mortgage, except that the later one included in addition the offspring of the livestock mentioned in the earlier mortgage and an additional item of property in consideration of the new loan of $125. The court held that the giving of the later chattel mortgage within four months of the bankruptcy in renewal of the prior valid chattel mortgage and covering the same property did not constitute an unlawful preference; nor did the inclusion of additional property render it preferential, where the mortgagor received a further present consideration sufficient to warrant the additional security. See, also, Matter of Shepherd, 6 A.B.R. 725; In re Endlar (C.C.A.) 192 F. 762; In re Schwab (D. C.) 258 F. 772.

The mere exchange of one kind of property or security for another of equal value, the renewal of a mortgage, or a pledge of property for a present consideration are not void as preferences, though done within four months of the filing of a bankruptcy petition, since one creditor is not favored or preferred over others and the bankrupt's estate is not diminished. Remington on Bankruptcy (3d Ed.) vol. 4, § 1703; Gilbert's Collier on Bankruptcy (4th Ed.) §§ 1172, 1170; Sawyer et al. v. Turpin et al., 91 U.S. 114, 23 L.Ed. 235.

The conclusion of the court is that the later chattel mortgage for $850 was given for a present valid consideration and as a mere renewal in good faith of the earlier mortgage and therefore is valid.

The Coudersport Credit Production Association's petition to review is sustained;

340

the order of the referee is reversed; and the petition of William A. Eimer, administrator, to declare the chattel mortgage void, is dismissed.

## DOOLEY IMPROVEMENTS, Inc., v. MOTOR IMPROVEMENTS, Inc.

No. 957.

District Court, D. Delaware.

Jan. 27, 1937.

See, also, 6 F.Supp. 161.

Hugh M. Morris, of Wilmington, Del., and John M. Zane and Harold W. Norman (of Zane, Morse, Zimmerman & Norman), both of Chicago, Ill., for plaintiff.

Robert H. Richards (of Richards, Layton & Finger), of Wilmington, Del., and Theodore S. Kenyon and Frederick Bachmann (of Kenyon & Kenyon), both of New York City, for defendant.

NIELDS, District Judge.

This is a patent suit charging Motor Improvements, Inc., with infringement of United States letters patent No. 1,847,817 granted on March 1, 1932 to Don Cole, assignor to Dooley Improvements, Inc., the plaintiff. The patent is entitled "Lubricating System." The answer denies infringement and challenges the validity of the patent. The answer also asserts a counterclaim charging plaintiff with unfair practices.

There is no evidence as to the character of plaintiff's business, if any. There is no evidence that plaintiff ever made or sold the lubricating system of its patent.

Defendant was organized in 1923. For eleven years, as exclusive licensee under the Sweetland patents it has manufactured and sold an oil filter called "PurOlator" to the number of 9,000,000. These filters are standard equipment on Chrysler, Buick, Oakland, and other cars. Defendant's filter consists of a casing containing a canton flannel bag compactly arranged into a spiral or helix. Thus there is provided a filtering area which is many times the cross-sectional area of the casing itself. In addition, defendant's filters are